John Eric LAWRENCE *v.* STATE of Arkansas

CA CR 91-274 · 839 S.W.2d 10

Court of Appeals of Arkansas
En Banc
Opinion delivered July 8, 1992
[Rehearing denied August 19, 1992.]

*Jonathan P. Shermer, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. On March 4, 1990, a stolen vehicle driven by appellant, John Eric Lawrence, crossed the center line of the highway and collided head-on with an approaching vehicle.

Killed in the accident were Verla Chisum, a passenger in the on-coming vehicle, and Gregory Paul Gay, a passenger in the car appellant was driving. The other driver, Sandra Chisum, sustained severe injuries as a result of the collision. The wreck occurred just moments after police officers had broken off their high-speed pursuit of the vehicle operated by appellant.

Appellant was subsequently charged in the Circuit Court of Pope County with theft by receiving in connection with the stolen vehicle; two counts of manslaughter for the deaths of Chisum and Gay; and second degree battery related to the injuries received by Sandra Chisum. A jury found appellant guilty of these offenses as charged, and appellant received sentences of ten years for theft by receiving; ten years for manslaughter connected with the death of Mrs. Chisum; six and one half years for manslaughter for the death of Mr. Gay; and, six years for second degree battery. The trial court ordered these sentences to be served concurrently, but consecutively to the period of incarceration that had recently been imposed in a probation revocation proceeding.

On appeal, appellant advances the following three issues for reversal: (1) the trial court erred in not ordering a mental evaluation pursuant to Ark. Code Ann. § 5-2-305 (Supp. 1991); (2) the trial court erred in failing to find that double jeopardy was a bar to further prosecution; and, (3) the court erred in failing to find that his course of conduct was uninterrupted such that he could only be convicted of one offense resulting from the wreck. We find no error, and affirm.

Appellant's first point is that the trial court erred in refusing to suspend the proceedings for appellant to undergo a psychiatric examination to determine his capacity to stand trial. For purposes of our review, it is necessary to set out the factual background relating to this issue. Appellant was also seriously injured in the collision. From the record, it appears that he sustained some form of head injury, as well as a badly broken leg. On March 20, 1990, appellant's counsel wrote a letter to the court in which he stated that appellant "presently lacks the capacity to understand the proceedings against him. I will advise the court when his incapacity ceases if it does." This letter prompted the court to enter an order excluding for speedy trial purposes the period between March 20th and July 2nd, "[a]s defendant is unable to

assist counsel and unable to proceed to trial."

Since appellant had yet to appear before the court for arraignment, the court held a hearing on May 23, 1990, to entertain the prosecutor's request that appellant be required to remain at the rehabilitation center in Hot Springs where he was recuperating from his injuries, or that he be placed in jail, or that he be released on bond. At this hearing, the court was generally informed of appellant's physical infirmities, and the court learned for the first time that appellant's mental difficulties involved the loss of memory. Specifically, the court was made aware of a letter written by a Dr. Michael Church which stated that appellant was "found to have a moderate impairment in his memory involving recent events as well as memory recall. He also has very severe impairment of his long-term memory." The court entered an order requiring that appellant remain in the Hot Springs Rehabilitation Center, and that the court be informed of his release from that facility. In this order, dated May 30, 1990, the court also stated:

> Defendant's counsel, in a letter dated March 20, 1990, notified the Court that his client lacks the capacity to understand the proceedings against him and effectively assist in his own defense. The Court has previously entered an order tolling the running of the speedy trial time.
>
> . . .
>
> The defendant's physicians at the Hot Springs Rehabilitation Center are hereby directed to provide this Court with a written report relating to the defendant's physical and mental condition. Also, the defendant's physician is to indicate in the report whether or not the defendant is able to appear before this Court for arraignment on July 2, 1990.

Thereafter, in June, the appellant appeared before the same trial judge for a revocation hearing held in Johnson County. There is no indication that appellant's incapacity to proceed was questioned at that hearing.

Appellant's trial was eventually scheduled for February 26, 1991. Five days before trial, appellant's counsel filed a pleading

entitled "Notice of Lack of Fitness to Proceed." In this notice, counsel requested that appellant be mentally evaluated based on the assertion that appellant was unable to provide assistance in preparing for trial because he "has no memory of the events involving the allegations of illegal conduct which have been made." At a hearing, appellant's counsel maintained that, by filing this notice, the trial court was required to suspend the proceedings for the purpose of obtaining a mental examination. Counsel further argued that an examination was necessary because the trial court had earlier found appellant unfit to proceed and had ordered that a report of appellant's mental condition be made. The trial court questioned the appellant who acknowledged that he understood the nature of the charges and the range of penalties that could be imposed, but said that he could not recall anything about the events surrounding the collision. Appellant also told the court that he had been in the rehabilitation center for treatment of his physical injuries, and stated that he had been advised that his memory would return over time, and that he had been given a memory notebook in which to write down things that he remembered. Appellant further stated that he was unaware that any doctor had recommended that he seek psychiatric counselling. The court also heard the testimony of a Pope County jailor, Jack Branch, who had known appellant prior to his incarceration. Mr. Branch stated that he had asked appellant why he was in jail and that appellant explained to him that he had stolen a white Trans Am and had been involved in an accident. Based on the conversations he had with appellant and his observation of appellant's interaction with other inmates, Mr. Branch did not believe appellant's assertion that he was suffering from a loss of memory.

The trial court denied appellant's request for a mental evaluation based on a finding that the notice, which spoke only of memory loss as the basis of appellant's incapacity, failed to put appellant's mental competency in issue. On appeal, appellant asserts that the trial court's ruling was in error.

It is recognized that the conviction of an accused while he is legally incompetent to stand trial violates due process. *Addison* v. *State*, 298 Ark. 1, 765 S.W.2d 566 (1989). Thus, Arkansas Code Annotated § 5-2-302 (1987) provides that no person who, as a result of mental disease or defect, lacks the

capacity to understand the proceedings against him or to assist effectively in his own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures. Arkansas Code Annotated § 5-2-305 (Supp. 1991) provides in pertinent part that "[w]henever a defendant charged in circuit court files notice that he will put in issue his fitness to proceed, or that there is reason to doubt his fitness to proceed, the court shall immediately suspend all further proceedings in the prosecution," and that, upon the suspension of the proceedings, the court shall enter an order directing the defendant to undergo examination and observation by one or more psychiatrists at a local regional mental health center; or appointing at least one qualified psychiatrist to make an evaluation and report; or directing the Director of the Arkansas State Hospital to examine and report on the mental condition of the defendant; or other suitable facility for the purpose of the examination. *See* Ark. Code Ann. § 5-2-305(a)(2) & (b)(1) (Supp. 1991). It is clearly the intent of this statute to prevent the trial of any person who is legally incompetent. *See Ball* v. *State,* 278 Ark. 423, 646 S.W.2d 693 (1983). However, a defendant in a criminal case is ordinarily presumed to be mentally competent to stand trial. *Deason* v. *State,* 263 Ark. 56, 562 S.W.2d 79 (1978). The test of competence to stand trial is whether an accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him. *Lipscomb* v. *State,* 271 Ark. 337, 609 S.W.2d 15 (1980).

In the case at bar, the nature of appellant's claim of incompetence was specifically identified in the notice as being his inability to recall the event surrounding the wreck. In at least two cases, our supreme court has held that amnesia or lack of memory is not an adequate ground for holding a defendant incompetent to stand trial. *Rector* v. *State,* 277 Ark. 17, 638 S.W.2d 672 (1982); *Deason* v. *State,* 263 Ark. 56, 562 S.W.2d 79 (1978). In light of these decisions, we share the trial court's view that appellant failed to put in issue his fitness to proceed under the statute in that the asserted ground is not recognized as a mental disease or defect for which an accused is considered incompetent to stand trial. Under the peculiar circumstances of this case, we perceive no

error in the trial court's refusal to halt the proceedings and order a mental evaluation based on the notice filed in this case. We also attach no significance to the previous orders entered by the trial court. We think that these two orders were simply responsive to counsel's letter of March 20, 1990, and that it is clear that the court was repeating what counsel had averred in the letter as opposed to the court's making a finding that appellant was not competent to proceed. Also, close inspection of counsel's letter and the letter written by Dr. Couch reveals no specific assertion that appellant was suffering from a mental disease of defect which affected his competency to proceed, but rather that it was his lack of recollection that was affecting his capacity to proceed, which, as stated above, is not a proper basis for declaring an accused unfit to stand trial. In addition, the trial judge specifically stated at the hearing that his concern at that time was appellant's physical ability to appear before the court, and not his mental condition. We also note that, after the entry of these orders, appellant participated in the revocation hearing without raising an issue of his mental competency. In sum, under the circumstances of this case, we find no error in the trial court's ruling. We add that, even though we consider the notice which was filed ineffective, there is otherwise nothing in the record which would have given the court "reason to doubt" appellant's fitness to proceed so as to trigger the requirements of Ark. Code Ann. § 5-2-305. *See Hudson* v. *State*, 303 Ark. 640-A, 801 S.W.2d 48 (1990) (supplemental opinion denying rehearing).

Appellant next argues that the trial court erred in not granting his motion to dismiss made on grounds of double jeopardy. In October of 1989, appellant pled guilty in the Johnson County Court to charges of burglary and theft of property, and was placed on probation for five years. After the present charges had been filed, the state initiated revocation proceedings alleging that appellant had violated the condition of his probation which required that he not commit any offense punishable by imprisonment. As reflected by a judgment entered in the Johnson County Circuit Court on June 27, 1990, the court revoked appellant's probation and sentenced him to concurrent terms of twenty and ten years, respectively, for burglary and theft of property. Appellant contends that he was twice placed in jeopardy because the charges for which he stood trial previously served as the basis

for the revocation of his probation.

The double jeopardy clause protects defendants in criminal proceedings against multiple punishments or repeated prosecutions for the same offense. *United States* v. *Dinitz*, 424 U.S. 600 (1976). Jeopardy denotes "risk," which in the constitutional sense, is traditionally associated with a criminal prosecution. *Breed* v. *Jones*, 421 U.S. 519 (1975). It has been held that the risk to which the double jeopardy clause refers is not present in proceedings that are not "essentially criminal." *Helvering* v. *Mitchell*, 303 U.S. 391 (1938); *see also Farris* v. *State*, 303 Ark. 541, 798 S.W.2d 103 (1990). The Supreme Court has observed that probation revocation, like parole revocation, is not a stage of a criminal prosecution, even though it does result in the loss of liberty. *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973); *see also Pyland* v. *State*, 302 Ark. 444, 790 S.W.2d 178 (1990). Consequently a person on probation is not entitled to the "full panoply of rights" afforded a defendant in a criminal prosecution. *Morrissey* v. *Brewer*, 408 U.S. 471 (1972).

Our supreme court has dealt with the issue of double jeopardy in the context of revocation proceedings in the case of *Townsend* v. *State*, 256 Ark. 570, 509 S.W.2d 311 (1974). In *Townsend*, while the appellant was under a suspended sentence, he was charged with the offenses of burglary and grand larceny. Based on these charges, the state also filed a petition to revoke the appellant's suspended sentence. At trial, the appellant was granted a directed verdict of acquittal, as the trial court found that the testimony of an accomplice had not been sufficiently corroborated. At the subsequent revocation hearing, it was stipulated that the court could consider the accomplice's testimony taken at trial, and the trial court revoked the suspended sentence on the basis of that testimony. On appeal from the revocation, the appellant contended that he was placed in double jeopardy, arguing that the revocation hearing constituted a second trial on the charges for which he had been acquitted. The supreme court, however, did not agree that former jeopardy barred revocation after an acquittal on the underlying charges. In so holding, the court observed that "[a] revocation of a suspension is in the nature of a revocation of a privilege previously extended," and reasoned that "Townsend was not given an additional sentence following the revocation hearing; rather, the court only

directed that he be required to serve the full sentence that had been rendered several years earlier." Inasmuch as it is a fundamental concept that reprosecution of a defendant following an acquittal is barred by double jeopardy, *see Cozzaglio* v. *State*, 289 Ark. 33, 709 S.W.2d 70 (1986), it is implicit in the court's holding that former jeopardy does not apply to revocation proceedings. We consider the decision in *Townsend* instructive, even though the scenario differs in that there the revocation followed an acquittal, whereas here the revocation preceded the trial. We find this distinction immaterial for the reason that double jeopardy either applies to revocation proceedings, or it does not. If it does not apply to revocation, it makes little difference whether revocation precedes or follows a criminal prosecution. *See e.g. United States* v. *Miller*, 797 F.2d 336 (6th Cir. 1986).

■ A majority of courts which have specifically addressed this issue have also found that double jeopardy does not apply to revocation proceedings. *State* v. *Quarles*, 761 P.2d 317 (Kan. Ct. App. 1988). *See United States* v. *Miller*, 797 F.2d 336 (6th Cir. 1986); *Jonas* v. *Wainwright*, 779 F.2d 1576 (11th Cir. 1986); *Thompson* v. *Reivitz*, 746 F.2d 397 (7th Cir. 1984); *United States* v. *Whitney*, 649 F.2d 296 (5th Cir. 1981); *State* v. *Chase*, 588 A.2d 120 (R.I. 1991); *Davenport* v. *State*, 574 S.W.2d 73 (Tex. Crim. App. 1978); *State* v. *Eckley*, 579 P.2d 291 (Or. Ct. App. 1978). As said by the court in *State* v. *Quarles, supra*:

> With the exception of *Snajder* [246 N.W.2d 665 (Wis. 1976)], these courts uniformly hold that, although a defendant is at risk at a probation or parole hearing, the risk does not rise to the level of being 'put in jeopardy' in the constitutional sense because the revocation hearing is not equivalent to a criminal prosecution; in other words, the hearing is not a proceeding which could result in a conviction. The purpose of a revocation hearing is not to punish a criminal for violation of the law, but rather to determine whether he has violated the conditions of his probation. The court's authority to revoke probation does not depend on whether the defendant's probationary conduct is criminal. Rather, the function of the court at the probation revocation hearing is to determine whether to

impose or execute a sentence for an offense of which the defendant has already been convicted and for which probation was granted.

*State* v. *Quarles*, 761 P.2d at 320. Based on the guidance offered in *Townsend* v. *State, supra,* and the authorities mentioned above, we conclude that appellant was not placed in double jeopardy.

As his final issue, appellant contends that the trial court erred in not granting his motion to dismiss the charge of second degree battery and one of the counts of manslaughter. It is the appellant's contention that the conduct upon which the charges of manslaughter and second degree battery, the car wreck, was a single, continuous and uninterrupted act out of which he could only be prosecuted for one offense.

In making this argument, appellant relies on Ark. Code Ann. § 5-1-110(a)(5) (1987), which provides:

(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(5) The conduct constitutes an offense defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

The supreme court has held, however, that in order for this subsection of the statute to be applicable, the prohibited "conduct must be *defined* as a continuing course of conduct crime." *Smith* v. *State*, 296 Ark. 451, 757 S.W.2d 554 (1988). *See also Rhodes* v. *State*, 293 Ark. 211, 736 S.W.2d 284 (1987); *Rowe* v. *State*, 271 Ark. 20, 607 S.W.2d 657 (1980). In reference to the offenses here, a person commits manslaughter if he recklessly causes the death of another person, Ark. Code Ann. § 5-10-104(a)(3) (1987), while a person commits second degree battery if he recklessly causes serious physical injury to another person by means of a deadly weapon. Ark. Code Ann. § 5-13-202(a)(3) (1987). Thus, neither manslaughter nor second degree battery is specifically defined as a continuing course of conduct. Therefore,

this statute is of no benefit to appellant and does not prohibit his being tried and convicted of these charges as separate offenses. Moreover, appellant's argument is not consistent with the supreme court's decision in *Holder* v. *Fraser*, 215 Ark. 67, 219 S.W.2d 625 (1949). There, the court held that former jeopardy did not bar successive prosecutions for charges of involuntary manslaughter that were based on the deaths of three persons in a single traffic accident. Focusing on the "reckless" element of intent contained in the former statute, Ark. Stat. Ann. § 41-2209 (1947), the court concluded the "[p]etitioner risked a violation of the statute as to each person whose life he imperiled and may be held separately responsible for each death proximately resulting from the prohibited conduct."

Affirmed.