2010 Ark. App. 804

**Ciro JIMENEZ, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1398.**

Court of Appeals of Arkansas.

Dec. 8, 2010.

Paul J. Teufel, Jonesboro, for appellant.

Dustin McDaniel, Atty. Gen., Eileen W. Harrison, Asst. Atty. Gen., Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Ciro Jimenez was charged by criminal information with rape, kidnaping, aggravated assault, and endangering the welfare of a minor. Enhancements were sought because he allegedly committed these felonies in the presence of a minor. Jimenez was found guilty on all charges and was sentenced to fifteen years for the rape and twenty years for the kidnaping. These sentences were ordered to run consecutively, but each of the remaining sentences was ordered to run concurrently. On appeal, Jimenez argues three points: 1) that because he attempted to invoke his right to counsel, his confession was tainted and should have been suppressed; 2) that the trial court erred in its decision to place two jurors back on the jury (after finding that the State had successfully raised a *Batson* challenge) following Jimenez's peremptory strikes of them; 3) that the trial court erred in refusing his request for a pretrial, mental evaluation. Because we find merit in both Jimenez's first and third arguments, we need not address his second point on appeal. We reverse Jimenez's convictions and remand the case for a new trial.

The facts of this case, as presented by the State, are as follows. Over a twenty-four-hour period, Jimenez kidnaped his wife and bound her with duct tape and a cattle rope. During the incident, Jimenez was alleged to have threatened the lives of his family with a gun. The State also argued that he twice had sexual intercourse with his wife "by forcible compulsion." The altercation concluded with an armed standoff between Jimenez and law enforcement. Following the incident, Jimenez gave a custodial statement to police, after being interrogated by officers Geovanni Serrano and Greg Hines.

The purpose of the interrogation was to further develop the information relating to the accusation of rape. Because Jimenez did not speak English, the interview was conducted in Spanish (Serrano spoke Spanish and took the lead). During the interview, Jimenez admitted to certain illegal conduct relating to the rape of his wife. The interrogation was translated, tran-

scribed, and offered to the jury as evidence against Jimenez.

During the interrogation the following exchanges occurred:

OFFICER: According to your rights you can use the telephone to communicate with your family, friend or lawyer. Do you understand?

JIMENEZ: Can I get it? (Note: here the trial court found the officer's testimony that this statement was a request for a Kleenex not a response to the question asked by the officer).

\* \* \* \* \* \*

OFFICER: Can you sign here?

JIMENEZ: Would rather have a lawyer. I mean I don't know what I would be signing. Is that o.k.?

OFFICER: If that is what you want it is okay. What I read to you are your rights, but if you want a lawyer and you don't want to sign, you have every right to. It's all here in Spanish and English.

JIMENEZ: It's just sometimes I get nervous. My blood pressure drops.

OFFICER: (In English to other officer) He says he might want an attorney here because he doesn't know what he is signing. I told him to go ahead and read them through.

\* \* \* \* \* \*

JIMENEZ: But if you ask me and I don't know how to answer you, I need someone to help me.

\* \* \* \* \* \*

JIMENEZ: I would prefer a lawyer. I don't have rights here.

\* \* \* \* \* \*

JIMENEZ: I have told you some. I answered some questions, but this has affected me, I don't want it to affect me more. What I am saying now is another question; I would need someone to advise me. I am remorseful, sorry to everyone I offended. More questions for me? Well, I would like to, but I need

someone to advise me. Then, I'll answer what you want.

These excerpted exchanges are the basis for Jimenez's first point on appeal. He claims that because he asserted his right to counsel, yet was denied the assistance he sought, the trial court erred in its refusal to suppress his confession. We begin our examination of the voluntariness of Jimenez's custodial confession by reviewing the trial court's findings of fact for clear error, but we must make an independent determination as to the ultimate question of whether the confession was voluntary. Voluntariness is a question of law that is reviewed de novo *Clark v. State*, 374 Ark. 292, 300, 287 S.W.3d 567, 572–73 (2008). In making the determination of voluntariness, our review is directed toward the totality of the circumstances surrounding the custodial statement. *Id.* at 300, 287 S.W.3d 567, 572–73.

Once a defendant invokes his right to counsel at a custodial interrogation, the police may not interrogate any further until counsel is provided (or until the defendant initiates further communication). *Vidos v. State*, 367 Ark. 296, 303, 239 S.W.3d 467, 473 (2006). Also, a defendant must assert his rights clearly and unambiguously such that a reasonable police officer would understand that the defendant wanted to cut off questioning. *Whitaker v. State*, 348 Ark. 90, 95, 71 S.W.3d 567, 570–71 (2002). If the statement fails to meet the requisite level of clarity, the officers are not required to end the interview. *Id.*, 71 S.W.3d at 570–71 (holding that a suspect's statement that he was not ready to talk was equivocal because he implied that he would be ready to talk at some future point).

■ Here, the State argues that throughout the interview Jimenez was either equivocal in his request, resumed talking of his own volition, or was not

specifically referencing a need of counsel. Also, the State highlights the officers' efforts to ensure that Jimenez understood the nature of the interview—his rights were offered in Spanish; a Spanish-speaking officer conducted the interview; the officers reminded him throughout the interview of his rights; and the officers were careful to let Jimenez reinitiate the contact following the would-be request. However, even if we were to view the totality of the circumstances surrounding Jimenez's request with a blind eye to the cumulative nature of Jimenez's requests and overlook the real possibility that his lack of precision or equivocacy could be a result of the inevitable fact that words and meaning are often "lost in translation," the final excerpted exchange sounds the death knell for the State's position.

> JIMENEZ: The record indicates that I have told you some. I answered some questions, but this has affected me, I don't want it to affect me more. What I am saying now is another question; I would need someone to advise me. I am remorseful, sorry to everyone I offended. More questions for me? Well, I would like to, but I need someone to advise me.

At this point, Jimenez asserted his rights in a clear and unambiguous manner to such a degree that a reasonable police officer would understand that questioning must cease. *Id.* at 95, 71 S.W.3d at 570–71. Because Jimenez's incriminating statement was made after he invoked his right to counsel, the trial court's failure to suppress the statement was error. Furthermore, we need not address the State's harmless-error argument in light of our conclusion that the denial of Jimenez's request for a mental-health examination was reversible error.

■ This mental-evaluation request was tendered on the morning of trial, when Jimenez first informed the court that he intended to raise the affirmative defense of mental disease or defect and requested that the case be stayed so he could undergo a forensic evaluation pursuant to Arkansas Code Annotated section 5–2–305 (Repl.2006). Jimenez stated several reasons for his request—no meaningful assistance in his own defense; the desire to explore the defense of temporary insanity and not appreciating the consequences of his actions; and the inconsistent statements from the police and Jimenez. The trial court denied the request stating that the case had been pending for two years and that filing the request the day of trial was essentially too late. The trial court also found no credible basis for the allegation that Jimenez suffered from mental disease or defect. Jimenez contends that the trial court was clearly erroneous in declining to order a mental evaluation pursuant to the mandatory language of section 5–2–305. We agree.

The statute plainly states that the trial "court *shall immediately suspend* any further proceedings" if "[a] defendant charged in circuit court *files notice* that he or she intends to rely upon the defense of mental disease or defect." Ark.Code Ann. § 5–2–305 (emphasis added). As such, very little is required of the defendant to trigger the mandatory language of the statute—mere notice will suffice. However, the mandatory immediate suspension of the proceeding is subject to the timeliness provision contained in Arkansas Code Annotated section 5–2–304 (Repl.2006). According to this statute, "When a defendant intends to raise mental disease or defect as a defense in a prosecution or put in issue his or her fitness to proceed, the defendant *shall notify the prosecutor and the court at the earliest practicable time.*" Ark. Code Ann. § 5–2–304 (emphasis added). There is no room for doubt, in this case (which had been pending for approximate-

ly two years) the day of trial was not the "earliest practicable time."

However, according to the statute, if a defendant fails to follow the mandatory time strictures of the statute, the prosecutor is entitled "to a continuance that for limitation purposes is deemed an excluded period granted on application of the defendant." Ark.Code Ann. § 5–2–304. Thus, the penalty for untimely notice is more time (charged to the defendant) for the State to prepare for the newly revealed defense. The State's argument that Jimenez presented no legitimate ground for the mental-health evaluation is appealing and is in accord with our decision in *Holden v. State*, 104 Ark.App. 5, 289 S.W.3d 125 (2008). However, there is nothing in this provision to obviate the requirement that once notice of |₇a mental-defect defense is tendered, the trial court shall immediately suspend the proceeding.

Here, Jimenez gave such notice yet the proceedings were not immediately suspended so that he could obtain the mental-health evaluation to which he was entitled. As such, we reverse and remand his conviction for new trial. Furthermore, to the extent that this opinion conflicts with *Holden* or other holdings of our court, we expressly overrule the prior precedents.

Reversed and remanded.

GLOVER, ABRAMSON, HENRY, BAKER, and BROWN, JJ., agree.