2011 Ark. App. 104

**Travis SMITH, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–465.**

Court of Appeals of Arkansas.

Feb. 9, 2011.

Rehearing Denied March 16, 2011.

John Henderson Bradley, Blytheville, for appellant.

Valerie Glover Fortner, Little Rock, for appellee.

RITA W. GRUBER, Judge.

Travis Smith appeals the revocation of his suspended sentence. He does not challenge the trial court's finding that he possessed marijuana in violation of the conditions of his suspended imposition of sentence. His sole point on appeal is that the court erred in denying his motion for a mental examination. We affirm.

On February 14, 2005, Smith appeared in circuit court and pled guilty to possession of cocaine with intent to deliver. The court accepted his plea and sentenced him to a prison term followed by sixty months' suspended imposition of sentence, subject to certain conditions. On May 5, 2009, the State filed a petition to revoke Smith's suspended imposition of sentence, alleging that he had violated the condition that he not commit any criminal offense punishable by imprisonment. The allegation noted that officers had arrested Smith after finding him in possession of marijuana and drug paraphernalia, and that he had been charged with second-offense possession of marijuana and possession of drug paraphernalia.

On the morning of Smith's January 19, 2010 revocation hearing, defense counsel made an oral motion that Smith be psychologically evaluated because of his questionable ability to assist in his defense. Pointing out a fist-sized dent on the side of Smith's head, counsel explained that Smith said he had been hit by a train in 2007, was in a coma for a month afterward, and had memory problems so extreme that he could not remember yesterday's occurrences or the event that led to the revocation petition. Counsel stated that Smith had been unable to come to counsel's office and that they had talked only in the hall-

way. No documentary evidence was offered, nor was there testimony by Smith or any witnesses to support these claims.

The trial court noted that counsel had been appointed after the filing of the revocation petition the previous May; that a discovery motion had been made; that the case was continued on defense's motion in July and set for October; that Smith was in the city jail in October and was brought into court; that Smith appeared with counsel; and that, again, the case was continued on a motion by the defense. The court found that Smith and his counsel apparently had been in contact on three or more occasions, and that his case had been set and continued on defense motions. The court stated that unless something had happened after the petition had been filed and was pending, it did not believe that good cause was provided for ordering a mental evaluation.

The motion for mental evaluation was denied, and the revocation hearing began immediately. Finding that Smith had violated conditions of his suspended imposition of sentence, the court granted the petition to revoke and pronounced sentence of thirty-six months' imprisonment to be followed by sixty months' suspended imposition of sentence.

■ Smith contends on appeal that he was not fit to proceed at the revocation hearing. He argues that he was unable to effectively assist his attorney in his defense because he could not remember what had happened and that his inability to assist rendered his constitutional right to an attorney valueless. He asserts that defense counsel is in the best position to know whether a defendant can provide assistance and is the only person who can

evaluate, at least short term, whether there is a question about the defendant's ability to assist in his own defense. This is simply not so under Arkansas statutes and case law.

Smith relies upon the following provisions of Ark.Code Ann. §§ 5–2–302, –304, and –305. Arkansas Code Annotated § 5–2–302 (Repl.2006) directs that a person lacking capacity to assist effectively in his or her own defense as a result of mental disease or defect shall not be tried, convicted, or sentenced for the commission of an offense while the incapacity endures. Section 5–2–304(a) (Repl.2006) requires a defendant intending to raise mental disease or defect as a defense in a prosecution or put in issue his or her fitness to proceed to notify the prosecutor and the court at the earliest practicable time. Section 5–2–305(a)(1)(B) and (C) (Supp.2009) mandates, subject to sections 5–2–304 and 5–2–311,[1] immediate suspension of further prosecutorial proceedings if there is reason to believe that a defendant's mental disease or defect will or has become an issue, or reason to doubt that the person is fit to proceed.

■ A defendant facing revocation must be accorded due process but is not entitled to all trial safeguards available to a person not yet convicted; the decision whether to provide a psychological evaluation to a revocation defendant, like the decision of entitlement to counsel, is made on a case-by-case basis. *Pyland v. State*, 302 Ark. 444, 790 S.W.2d 178 (1990). At the revocation hearing, defense counsel questioned Pyland's ability to assist in the defense because of his medications, hallucinations, and psychiatric care; counsel then moved for a continuance to allow a mental evaluation. The *Pyland* court upheld the trial

---

1. Ark.Code Ann. § 5–2–311, entitled "Incapacitated defendants, motions," is not pertinent to the present case.

court's denial of the motion, observing that Pyland gave lucid testimony, that he fully understood the event leading to the State's petition to revoke, and that nothing had occurred at the hearing that contributed to counsel's assertion that Pyland was unable to cooperate in his defense. Acknowledging *Ake v. Oklahoma*, 470 U.S. 68, 74, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the *Pyland* court stated that any "requirement of ... providing independent psychiatric help to determine at the time of 'trial' as well as competency at the time the offense was committed, does not apply to a proceeding that is not a part of a criminal trial." 302 Ark. at 447, 790 S.W.2d at 179.[2]

Defense counsel's motion for mental examination in the revocation case *Lamance v. State*, 89 Ark.App. 60, 200 S.W.3d 475 (2004), was based on an assertion that his client could not assist in her own defense or understand the proceedings because her IQ was 78. Using an analysis virtually identical to that of *Pyland*, the trial court noted that Lamance testified lucidly and demonstrated an understanding of the nature of the proceedings and the possible consequences. We concluded that this testimony contradicted defense counsel's assertions and that the trial court did not err in denying the motion.

Defense counsel did not request a mental-health examination on previous occasions when he addressed other motions in this case. Counsel's statements about Smith's mental health were based on a one-time conversation with him the morning of the revocation hearing and were not supported by anything else in the record. Counsel's only assertions regarding Smith's mental health were that Smith had no recollection of the offense that brought about the revocation and that Smith had extreme memory problems. A defendant alleging an inability to remember has failed to put his fitness to proceed in issue because lack of memory is not recognized as a mental disease or defect for which an accused is considered incompetent to stand trial. *Lawrence v. State*, 39 Ark.App. 39, 44, 839 S.W.2d 10, 13 (1992) (citing *Rector v. State*, 277 Ark. 17, 638 S.W.2d 672 (1982); *Deason v. State*, 263 Ark. 56, 562 S.W.2d 79 (1978)). The trial court thus had no reason to believe that Smith had a mental disease or defect and had no reason to doubt that Smith was fit to proceed; moreover, it's good-cause-for-evaluation analysis comported with the requirements of *Pyland* and subsequent case law.

The trial court did not err in denying Smith's motion for mental evaluation and proceeding with the revocation hearing. *See Hardaway v. State*, 321 Ark. 576, 906 S.W.2d 288 (1995) (applying clearly erroneous standard to trial court's setting a case for trial without additional psychiatric examination).

Affirmed.

VAUGHT, C.J., and ROBBINS and HOOFMAN, JJ., agree.

HART and BROWN, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting.

Arkansas Code Annotated section 5-2-302(a) (Repl.2006) states, "No person who lacks the capacity to understand a proceeding against him or her or to assist effectively in his or her own defense as a result of mental disease or defect shall be tried, convicted, or sentenced for the commission of an offense so long as the incapacity endures." Mr. Smith has been

---

**2.** In *Ake* the Supreme Court held that when an indigent defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, a state must provide access to a psychiatrist's assistance on this issue.

sentenced to 36 months in the Arkansas Department of Correction without being afforded the due-process safeguards that our criminal code requires. In affirming this case, the majority has made mistakes of both law and fact.

First, the majority has erred in relying on *Pyland v. State*, 302 Ark. 444, 790 S.W.2d 178 (1990), as justification for treating a defendant in a revocation proceeding differently than a defendant facing an original criminal charge. I acknowledge that *Pyland* supports such an approach, given the codification of Arkansas Code Annotated section 5–2–305(a) as it existed in 1990.[3] That version of the statute made mental evaluations available only to "a defendant charged in circuit court." Ark.Code Ann. § 5–2–305(a) (1987). This fact was noted by the *Pyland* court and provided the basis for its holding. Nonetheless, the *Pyland* court also recognized that the 1987 version of section 5–2–305 did not fully comport with due process.

Subsequently, the legislature broadened the reach of section 5–2–305 and rectified the due-process problem. While the current version of the statute retains some

subsections that specifically deal with "a defendant charged in circuit court," the legislature has made mental evaluations available to all "prosecutions." *Black's Law Dictionary* defines in part a prosecution as "a criminal action." 1298 (8th ed.2004). Even the majority apparently concludes that a revocation proceeding is a criminal action. Therefore, a plain reading of the current version of section 5–2–305 indicates that the legislature effectively overruled *Pyland*, and that case is a dead letter. However, for a reason not apparent to me, the majority struggles to apply both section 5–2–305 and *Pyland* and its progeny to the case at bar, despite the fact that *Pyland* is based on the fundamental premise that there is no statutory authority governing mental evaluations in revocation proceedings.

As a direct consequence of this flawed reasoning, the majority has written into the statute a requirement that a person facing a revocation proceeding must convince the trial court that his mental faculties are impaired before the trial court is obligated to order an evaluation. This

---

3. In 1990, section 5–2–305(a) read as follows: Whenever a defendant charged in circuit court:

(1) Files notice that he intends to rely upon the defense of mental disease or defect, or there is reason to believe that mental disease or defect of the defendant will or has become an issue in the cause; or

(2) Files notice that he will put in issue his fitness to proceed, or there is reason to doubt his fitness to proceed, the court, subject to the provisions of §§ 5–2–304 and 5–2–311, shall immediately suspend all further proceedings in the prosecution. If a trial jury has been impaneled, the court may retain the jury or declare a mistrial and discharge the jury. A discharge of the trial jury shall not be a bar to further prosecution.

The amended version of section 5–2–305(a) that was in effect for the case at bar reads as follows:

(a)(1) Subject to the provisions of §§ 5–2–304 and 5–2–311, the court shall immediately suspend any further proceedings in a prosecution if:

(A) A defendant charged in circuit court files notice that he or she intends to rely upon the defense of mental disease or defect;

(B) There is reason to believe that the mental disease or defect of the defendant will or has become an issue in the cause;

(C) A defendant charged in circuit court files notice that he or she will put in issue his or her fitness to proceed; or

(D) There is reason to doubt the defendant's fitness to proceed.

(2)(A) If a trial jury has been impaneled, the court may retain the jury or declare a mistrial and discharge the jury.

(B) A discharge of the trial jury is not a bar to further prosecution.

judge-made requirement puts the cart before the horse. A request for a mental evaluation is a request to secure an expert's opinion as to whether a person is fit to proceed in a criminal action, not confirm the validity of a trial judge's opinion.

Section 5-2-305(B) requires that a mental evaluation be ordered if "there is reason to believe that the mental disease or defect of the defendant will or has become an *issue* in the cause." (Emphasis added.) Here, the trial court had reason to believe that Mr. Smith's mental disease or defect would become an *issue* because his trial counsel raised it. It is important to note that this subsection says "cause," not *trial.* Again, there is no provision for an evidentiary hearing to determine the validity of the request, only that it be made, however informally. This is the very point on which our recent decision in *Jimenez v. State,* 2010 Ark. App. 804, 379 S.W.3d 762, handed down on December 8, 2010, overruled *Holden v. State,* 104 Ark.App. 5, 289 S.W.3d 125 (2008).

Finally, lost in the majority's opinion is the trial judge's rationale for refusing to allow a continuance for a mental evaluation. The trial court denied the motion because Mr. Smith's trial counsel failed to ask for the evaluation at an earlier appearance and therefore the request was therefore untimely. Denying the motion was clearly the wrong sanction. While Arkansas Code Annotated section 5-2-304(a) does require a defendant to "notify the prosecutor and the court at the earliest practicable time," subparagraph (b) provides that failure to do so only "entitles the prosecutor to a continuance that for limitation purposes is deemed an excluded period granted on application of the defendant."

The majority also makes a significant mistake of fact. It asserts that the only basis for Mr. Smith's trial counsel to request a mental evaluation was that "Smith had no recollection of the offense that brought about the revocation and that Smith had extreme memory problems." In reality, a fair interpretation of Mr. Smith's memory problems, as described by his trial counsel, could have been symptoms of a much larger problem. His trial counsel directed the trial court's attention to Mr. Smith's head where there is "a big dent in it about the size of a human fist." The court was told that the "dent" was caused by a train accident that resulted in Mr. Smith being in a coma for approximately a month. The significance of the described injury should be interpreted by an expert, not left to a trial judge's speculation.

BROWN, J., joins.