SLIP OPINION



Cite as 2014 Ark. App. 81

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–13–639

| | |
|---|---|
| JOE KING, II<br><br>APPELLANT<br><br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** February 12, 2014<br><br>APPEAL FROM THE POLK COUNTY CIRCUIT COURT<br>[NO. CR–2012-160]<br><br>HONORABLE J.W. LOONEY, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Joe King appeals his convictions by a Polk County jury on counts of possession of drug paraphernalia and possession of methamphetamine with the purpose to deliver. Appellant argues that the circuit court erred by denying his motions for (1) a psychological evaluation, (2) the suppression of evidence, and (3) directed verdict with respect to possession of methamphetamine with the purpose to deliver. We affirm.

On or about November 29, 2012, appellant was arrested and charged with possession with intent to use drug paraphernalia pursuant to Arkansas Code Annotated section 5-64-443(c) (Supp. 2011) and possession of a Schedule II controlled substance—methamphetamine—with the purpose to deliver, pursuant to Arkansas Code Annotated section 5-64-420(a)(2) (Supp. 2011). He was arraigned on December 5, 2012, tried on April 18, 2013, and found guilty of both counts. Appellant was sentenced, pursuant to a sentencing order filed on April 19, 2013, to serve 240 months in the Arkansas

Department of Correction on each count, with both sentences to run consecutively for a

total term of 480 months. He filed a timely notice of appeal on April 25, 2013.

I. *Sufficiency of the Evidence*

Although appellant discussed it last in his brief, we address his sufficiency argument

first for double-jeopardy purposes. *See Davis v. State*, 2013 Ark. App. 658, __ S.W.3d __.

In a challenge to the sufficiency of the evidence, this court views the evidence in the light

most favorable to the State and considers only the evidence that supports the conviction.

*Daniels v. State*, 2012 Ark. App. 9, at 1–2. This court will determine whether there is

substantial evidence to support the conviction. *Id.* Evidence is substantial if it is of sufficient

force and character to compel reasonable minds to reach a conclusion and pass beyond

suspicion and conjecture. *Heydenrich v. State*, 2010 Ark. App. 615, 379 S.W.3d 507. The

trier of fact resolves the questions of conflicting testimony, inconsistent evidence, and

credibility. *Daniels*, 2012 Ark. App. 9.

Arkansas Code Annotated section 5-64-420(a) states that it is unlawful for a person

to possess methamphetamine with the purpose to deliver it. The purpose to deliver may be

shown by any of the following factors:

> (1) The person possesses the means to weigh, separate, or package methamphetamine
> or cocaine; or
> (2) The person possesses a record indicating a drug-related transaction; or
> (3) The methamphetamine or cocaine is separated and packaged in a manner to
> facilitate delivery; or
> (4) The person possesses a firearm that is in the immediate physical control of the
> person at the time of the possession of methamphetamine or cocaine; or
> (5) The person possesses at least two (2) other controlled substances in any amount;
> or



(6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver methamphetamine or cocaine.

Ark. Code Ann. § 5-64-420(a)(1)–(6).

Appellant argues that these factors cannot be absolute evidence to prove purpose of delivery and that the jury's findings regarding his intent in this case were based on speculation. Appellant claims that the State did not present any evidence that he had sold any drugs or was trying to sell them. He argues that there is simply not substantial evidence in this case to prove that he possessed methamphetamine with the intent to deliver.

We disagree. At trial, Deputy Ronald Richardson testified that on November 29, 2012, he and Officer Fields from the 18th West Drug Task Force went to appellant's residence to investigate after receiving information from the Polk County Sheriff that appellant was dealing methamphetamine out of his residence. Upon their arrival, appellant exited the residence and met them on the front porch with a rifle in his hands. Deputy Richardson went into appellant's residence to make sure that no one else was inside with a weapon, while Officer Fields detained appellant on the porch and searched him for weapons. While inside, Deputy Richardson smelled the strong odor of burned marijuana and saw a marijuana-filled cigar, three feet inside the doorway, on the kitchen bar. Deputy Richardson testified that appellant then told him that he had smoked marijuana earlier that day. Deputy Richardson read appellant his *Miranda* rights and arrested him based on the marijuana and a vial containing methamphetamine residue found by Officer Fields.

Deputy Richardson testified that, while searching appellant incident to the arrest, he found a bag of methamphetamine rolled up in some money in appellant's front-left pocket.

Deputy Richardson explained that the bag contained a "usable amount" of methamphetamine for two people. Deputy Richardson told the circuit court that, while waiting in appellant's home for the search warrant and for a deputy to take him to jail, appellant told him that he had been receiving methamphetamine through the mail.

Officer Fields testified that when he executed the search warrant for appellant's home, he discovered twenty-four individual bags of methamphetamine totaling 8.49 grams. Officer Fields also found a bag of twenty-five assorted pills that were determined to be Schedule 3 and 4 controlled substances. Officer Fields testified that during his search he found a box in the kitchen that contained "numerous little baggies" and "a baby spoon that had a white powdery residue on it[.]" The baggies in the box were the same type of bags in which the methamphetamine was packaged. Continuing the search, Officer Fields found several sets of digital scales and more plastic baggies. He testified that the scales were the type typically used to separate large quantities of narcotics. Officer Fields testified that the way the methamphetamine was bagged and in one location, coupled with the digital scales and residue on them, indicated that appellant was selling methamphetamine.

The State correctly notes that four out of the five statutory factors indicating a purpose to deliver methamphetamine were present in this case. The State presented evidence at trial that (1) appellant possessed the means to weigh, separate, and package the methamphetamine; (2) the methamphetamine was separated and packaged in a manner to facilitate delivery; (3) appellant was holding a rifle when police arrived at his home; and (4) appellant also possessed four other controlled substances, including the marijuana and pills found by the officers. We

hold that the circuit court did not err by denying his motion for directed verdict with respect to the charge that he possessed methamphetamine with the purpose to deliver it.

## II. *Denial of Appellant's Request for a Psychological Evaluation*

This court will not reverse a circuit court's decision to deny a defendant's request for a mental evaluation unless that decision was clearly erroneous. *Jiminez v. State*, 2010 Ark. App. 804, 379 S.W.3d 762. A criminal defendant is ordinarily presumed to be mentally competent to stand trial, and the burden to prove otherwise is on the defendant. *Bryant v. State*, 94 Ark. App. 387, 231 S.W.3d 91 (2006). The test of competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational and factual understanding of the proceedings against him. *Id*.

Arkansas Code Annotated section 5-2-305(a)(1) (Supp. 2011)[1] states that the circuit court shall immediately suspend any further proceedings in a prosecution if:

> (A) A defendant charged in circuit court files notice that he or she intends to rely upon the defense of a mental disease or defect;
> (B) There is reason to believe that the mental disease or defect of the defendant will or has become an issue in the cause;
> (C) A defendant charged in circuit court files notice that he or she will put in issue his or her fitness to proceed; or
> (D) There is reason to doubt the defendant's fitness to proceed.

Officer Richardson testified at the suppression hearing that appellant had tried to commit suicide while in custody. He explained that, according to reports he received from

---

[1]Arkansas Code Annotated § 5-2-305(a)(1) was amended by Act 506 of the 2013 Arkansas legislative session, and subparagraphs (B), (C), and (D) were deleted.

other deputies, appellant was threatening suicide, and they took a pistol from him a week or two prior to the hearing. Appellant notes that his counsel was not provided a written statement regarding any suicide attempt prior to the hearing. At the hearing, counsel asked appellant about the incident, and appellant testified that he had been depressed. The following discussion was then held on the record:

> MR. RAINWATER: Okay. Your Honor, I asked my client about what Mr. Richardson was saying about the suicidal episode. He has reported to me that he has been depressed. Up to this point I haven't raised any issue. I want to ask him if he wants me to file for a psychological evaluation. Do you need one?

> APPELLANT: Yes.

> THE COURT: Well, depression in and of itself doesn't relate to the competency to stand trial, so I'd have to be convinced of a lot more than that before I would delay the trial. I mean, the jury has already been called. To grant a motion for a psychological, I don't think that statement in and of itself is not enough. So if that was a motion, Mr. Rainwater, it too is denied. Nine o'clock tomorrow.

Appellant reiterates that section 5-2-305 states that the court shall immediately suspend any further proceeding if, among other things, there is reason to believe that the mental disease or defect of the defendant will or has become an issue and if there is reason to doubt the defendant's fitness to proceed. This court in *Jiminez*, *supra*, determined that the circuit court was clearly erroneous in declining to order a mental evaluation pursuant to the mandatory language of section 5-2-305 regarding the immediate suspension of any further proceedings if a defendant charged in circuit court files notice that he or she intends to rely upon the defense of mental disease or defect. Appellant maintains that very little is required of the defendant to trigger the mandatory language of the statute—mere notice will suffice.

6

The mandatory immediate suspension of the proceedings is subject to the timeliness provision in Arkansas Code Annotated section 5-2-304 (Supp. 2011): "When a defendant intends to raise mental disease or defect as a defense in prosecution or put in issue his or her fitness to proceed, the defendant shall notify the prosecutor and Court at the earliest practicable time." Although appellant acknowledges that the day of the trial was not the earliest practicable time, according to the statute, if a defendant fails to follow the mandatory time strictures of the statute, the prosecutor is entitled to a continuance that, for limitation purposes, is deemed an excluded period granted on application of the defendant. Ark. Code Ann. § 5-2-304. Accordingly, appellant submits that the penalty for untimely notice is more time—charged to the defendant—for the State to prepare for the newly revealed defense. But there is nothing in this provision to obviate the requirement that once notice of a mental-defect defense is presented, the circuit court shall immediately suspend the proceedings.

> In denying appellant's request, the circuit court ruled:
>
> Depression in and of itself doesn't relate to competency to stand trial, so I'd have to be convinced of a lot more than that before I would delay trial. I mean, the jury has already been called. To grant a motion for [a] psychological [examination], I don't think that statement in and of itself is enough.

There is no evidence before us to indicate that appellant filed notice of his intent to rely on the defense of mental disease or defect or that he would put in issue his fitness to proceed. Nor did counsel even suggest to the circuit court that appellant was unable to understand the charges or assist in his defense. We hold that appellant's mere statement that he was

SLIP OPINION

"depressed" was not enough to give the circuit court reason to believe that mental disease or defect would be an issue or to give the circuit court reason to doubt his fitness to proceed.

*Jiminez*, *supra*, is distinguishable in that Jiminez actually filed notice with the court that "he intended to raise the affirmative defense of mental disease or defect and requested that the case be stayed so he could undergo a forensic evaluation." *Jiminez*, 2010 Ark. App. 804, at 5, 379 S.W.3d at 765. Moreover, Jiminez told the circuit court that he was requesting the mental evaluation because of "no meaningful assistance in his own defense; the desire to explore the defense of temporary insanity and not appreciating the consequences of his actions; and the inconsistent statements from the police and [himself]." *Id*. Here, appellant did not file any notice with the circuit court regarding his mental state or how it might affect his trial, nor did he provide the court with any insight into why a mental evaluation was needed. Accordingly, we hold that the circuit court's decision to deny appellant's request for a psychological evaluation was not clearly erroneous.

### III. *Denial of Appellant's Motion to Suppress Statement and Evidence*

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Davis*, *supra*. The appellate court defers to the superior position of the circuit judge to pass upon the credibility of witnesses. *Id*. It will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id*.

8

Arkansas Rule of Criminal Procedure 3.1 (2013) provides that an officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. If an officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous, the officer may search the outer clothing of the person and the immediate surroundings for any weapon or other dangerous item. Ark. R. Crim. P. 3.4 (2013).

The test in determining whether a frisk is reasonable is an objective one. *Franklin v. State*, 2010 Ark. App. 792, 378 S.W.3d 296. The question is whether a reasonably prudent person in the officer's position would be warranted in the belief that the safety of the police or that of others was in danger. *Id*. Due weight is given to specific reasonable inferences an officer is entitled to derive from the situation in light of his experience as a police officer. *Id*. An officer's reasonable belief that a suspect is dangerous must be based on specific and articulable facts. *Id*. A suspect's demeanor and manner, whether a suspect is carrying anything, and what he is carrying, any information received from third persons, and a suspect's apparent effort to avoid identification or confrontation by law-enforcement officers are all factors to be considered in determining whether an officer has grounds to reasonably suspect. *Id*.

In this case, it is undisputed that officers came to appellant's home to obtain his consent to enter and search the home. Officer Fields testified that he patted appellant's clothing and noticed a bulge in his pocket. Officer Fields asked appellant what it was, and appellant pulled out what Officer Fields described as a clear, plastic vial. He explained that inside it was a watch–battery-sized baggie that contained residue that he believed, based on his experience, to be methamphetamine. Officer Fields testified that, at that point, he believed that he had probable cause to make an arrest. He acknowledged that he did not advise appellant of his *Miranda* rights at that time, knowing that he was going to ask appellant for consent to search the residence. Officer Fields next asked if there was more methamphetamine in the house. Appellant replied, "[y]es," that there were "ten bags or so."

Officer Fields asked for consent to search, but appellant would not commit one way or the other. Officer Fields explained that, at that time, he and Deputy Richardson thought they had enough evidence to apply for a search warrant. At that time, they made the decision to arrest appellant, and they Mirandized him.

Appellant cites *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006), in which our supreme court stated that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. The supreme court also held that a person is in custody for the purposes of the *Miranda* warnings when he is "deprived of his freedom by formal request or restraint on freedom of movement of the degree associated with a formal arrest." *Id*. at 152, 243 S.W.3d at 873.

Appellant points out that officers kept him on a small porch in front of his single-wide trailer. His gun was taken away from him, and the officers would not allow him to go back into his house. He claims that he was under an "effective arrest" at the time of questioning and that he should have been read his *Miranda* rights at that time.

Officer Fields and Deputy Richardson were asked by the Polk County Sheriff to drive out to appellant's home, as there were complaints that drugs were being sold from the house.[2] It is undisputed that when they arrived at appellant's home, he met them on the front porch with a rifle. Deputy Richardson took appellant's rifle away, and Officer Fields conducted a pat-down search to ensure the officers' safety. While conducting the pat-down, Officer Fields said he felt a small cylindrical bulge in appellant's pocket. Officer Fields asked him what the bulge was, and, with no other prompting, appellant pulled from his pocket a clear, plastic vial that contained a watch-battery-sized baggie with methamphetamine residue inside. Officer Fields asked him if the residue would test positive for methamphetamine, and appellant replied, "[Y]es." Officer Fields next asked if there was more methamphetamine in the house. Appellant replied, "[y]es," that there were "ten bags or so." Shortly afterward, appellant was arrested and read his *Miranda* rights by Deputy Richardson.

Because appellant met the officers on his front porch with a rifle, Officer Fields reasonably detained and frisked him to ensure the officers' safety. The contraband was discovered when, after the valid frisk, appellant voluntarily pulled the contraband out of his

---

[2]This court may rely on trial testimony to affirm the circuit court's suppression ruling. *Charland v. State*, 2011 Ark. App. 4, 380 S.W.3d 465.

pocket and showed it to Officer Fields.  In its ruling, the circuit court found that under the totality of the circumstances Officer Fields was "entitled to do [pat-down] once [he] saw [appellant] with a weapon."  Given the totality of the circumstances, we hold that the circuit court's decision to deny appellant's motion to suppress the evidence was not clearly against the preponderance of the evidence.

Affirmed.

WOOD and BROWN, JJ., agree.

*Randy Rainwater*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Jake H. Jones*, Ass't Att'y Gen., for appellee.