PEOPLE v JENNE

Docket No. 97998. Submitted December 10, 1987, at Grand Rapids. Decided February 9, 1988.

Robert A. Jenne, Sr., was convicted of operating a motor vehicle under the influence of intoxicating liquor, Cheboygan Circuit Court, Robert C. Livo, J. Defendant appealed, alleging that a blood sample was taken in a manner not in accordance with the statute and that the results of the subsequent blood alcohol test were improperly admitted.

The Court of Appeals *held:*

The sample was drawn by a trained and experienced technician working in a hospital laboratory supervised by a licensed physician. The circumstances complied with the law's requirements.

Affirmed.

AUTOMOBILES — INTOXICATING LIQUORS — DRIVING UNDER THE INFLUENCE — BLOOD SAMPLES.

A blood sample drawn by a trained and experienced technician working in a hospital laboratory supervised by a licensed physician is drawn in compliance with the drunk driving laws (MCL 257.25a[4]; MSA 9.2325[1][4]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph P. Kwiatkowski,* Prosecuting Attorney, and *Deborah K. Canja,* Assistant Attorney General, for the people.

*Lewinski & Brewster, P.C.* (by *Paul M. Brewster*), for defendant on appeal.

REFERENCES

Am Jur 2d, Evidence § 830.

Am Jur 2d, Expert and Opinion Evidence § 116.

Qualification as expert to testify as to findings or results of scientific test to determine alcoholic content of blood. 77 ALR2d 971.

Before: R. M. MAHER, P.J., and GRIBBS and L. F. SIMMONS, JR.,* JJ.

PER CURIAM. Defendant appeals as of right from his conviction for operating a motor vehicle under the influence of intoxicating liquor, second offense, MCL 257.625; MSA 9.2325. The sole issue on appeal is whether the trial court erred in admitting the results of defendant's blood alcohol test. We affirm.

On the evening of his arrest, defendant refused a Breathalyzer test. He consented, however, to a blood alcohol test and was taken to Community Hospital in Cheboygan. A blood sample was taken at the hospital by Peggy Ann Wisley, who identified herself as a laboratory technician. Wisley admitted that she was not a certified technician, having failed her certification test. She explained that she had been trained by laboratory personnel to take blood samples and had been withdrawing blood as part of her duties for seven years. Wisley further testified that the blood was withdrawn in accordance with standard procedure which includes applying a tourniquet, cleaning the area with Betadine, a nonalcohol solution, and using a specially prepared blood sample collection kit provided by the police department. No medical doctor was present when she drew the sample from defendant. Richard Bedell, a laboratory technologist, testified that the laboratory was supervised by Dr. Otto, the hospital's chief pathologist. Dr. Otto had directed medical technicians in the lab, such as Wisley, to withdraw blood when requested by the police. Defendant objected to the admission of the blood sample results, arguing that Wisley was not a medical technician and that the sample had not been drawn under the direction of a licensed phy-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

sician. Finding that the statute governing the withdrawal of a blood sample for alcohol testing had been substantially complied with, the trial court admitted the test results.

MCL 257.625a(4); MSA 9.2325(1)(4) provides:

> A sample or specimen of urine or breath shall be taken and collected in a reasonable manner. Only a licensed physician, or a licensed nurse or medical technician under the direction of a licensed physician and qualified to withdraw blood acting in a medical environment, at the request of a peace officer, may withdraw blood for the purpose of determining the amount of alcohol or presence of a controlled substance or both in the person's blood, as provided in this act.

We will first address defendant's claim that the results of his test were inadmissible because Wisley was not a medical technician. Language used in statutes is to be given its ordinary meaning unless a different interpretation in indicated. *Goethal v Kent Co Supervisors*, 361 Mich 104, 111; 104 NW2d 794 (1960). The term "medical technician" has not been defined by the statute. The *American Heritage Dictionary, New College Edition* (1978), defines "medical" as "of or pertaining to the study or practice of medicine." "Technician" is defined as "a person whose occupation requires training in a specific technical process." Here, Wisley was given special training in drawing blood samples for the purpose of use in the practice of medicine. Although she called herself a laboratory technician, we believe that her occupation falls within the commonly accepted definition of medical technician.

We further find that defendant's blood sample was drawn "under the direction of a licensed physician." Section 625a previously required that

blood samples be drawn by a licensed physician or a registered nurse acting "under the supervision of a licensed physician." In OAG 1961-1962, No. 3557, p 79 (March 29, 1961), the Attorney General determined that registered nurses could only draw blood under "the immediate supervision and in the presence of the physician." The statute was amended in 1964 to add medical technicians as persons qualified to take blood samples and to change "supervision" to "direction." An amendment to a statute is to be construed as changing the meaning of the statute unless a different intent is manifest. *Bonifas-Gorman Lumber Co v Unemployment Compensation Comm,* 313 Mich 363, 369; 21 NW2d 163 (1946). Noting the change in the statute, the Attorney General concluded in a subsequent opinion that the term "direction"

> does not require the personal presence of a licensed physician when a licensed nurse or medical technician withdraws blood from a person for the purpose of chemical analysis provided appropriate directions have been given by a licensed physician. [OAG 1967-1968, No. 4559, p 73 (August 14, 1967).]

A commonly accepted definition of "direction" is the "management, supervision, or guidance of some action or operation." The *American Heritage Dictionary, New College Edition* (1978). Here, defendant's sample was drawn by a trained and experienced technician working in a hospital laboratory supervised by a licensed physician. We find that, under the circumstances of this case, defendant's blood sample was drawn in compliance with § 625a.

We further note that the purpose of § 625a is to ensure the reliability of a person's blood sample. Cf. *Collins v Secretary of State,* 384 Mich 656; 187 NW2d 423 (1971); *Gard v Michigan Produce Haul-*

*ers,* 20 Mich App 402; 174 NW2d 73 (1969). As nothing in the record suggests that the sample was unreliable, the trial court properly admitted the results of the test.

Affirmed.