Donald Keith GAVIN *v.* STATE of Arkansas

CR 92-182                                     827 S.W.2d 161

Supreme Court of Arkansas
Opinion delivered April 13, 1992

*Hough & Hough, P.A.*, by: *Stephen G. Hough*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant appeals from his conviction of DWI. The trial judge, sitting as the trier of fact, sentenced the appellant to serve twenty-four hours in the county jail, complete an alcohol education course, pay a $250 fine and court costs of $311. In his appeal, the appellant argues that the trial judge erred in admitting the results of his blood alcohol test into evidence because 1) there was no physician present when the blood sample was taken in violation of Ark. Code Ann. § 5-65-204(d); and 2) the sample was not taken pursuant to the Arkansas Regulations for Blood Alcohol Testing, § 3.20. We find no merit in the appellant's arguments, so we affirm.

At about 3:20 a.m., appellant's vehicle was clocked speeding by Officer Squires. The officer followed with his car's blue lights on, and it took the appellant almost one minute before he stopped his vehicle. When the officer approached the appellant's vehicle, he noticed that the appellant smelled strongly of alcohol and that his eyes were red. Appellant admitted to having consumed a couple of beers, and an empty beer can was found in the back of his truck. The officer also testified that the appellant had poor balance when he exited his vehicle. The appellant was given a portable breathalyzer test and was then taken to the police station for further testing. Appellant agreed to submit to a blood alcohol test. Officer Squires took the appellant to Mercy Hospital, and filled out a request form for the blood sample. His blood alcohol level was .16.

First, appellant argues that the trial court erred in admitting his blood alcohol test results into evidence because a doctor was not present when the registered nurse took his blood sample. Appellant argues that the presence of a doctor is necessary under the requirements of Ark. Code Ann. § 5-65-204(d) (Supp. 1991), which provides the following:

When a person shall submit to a blood test at the request of

a law enforcement officer under the provisions of this section, blood may be drawn by a physician or a person acting under the direction and supervision of a physician.

It is undisputed that, although a doctor was on call, one was not present at the hospital when the registered nurse, Vickie Richmond, took the blood sample at 3:55 a.m. Nurse Richmond testified that the standard hospital policy in taking a blood test is that a registered nurse, doctor, or registered lab person draws the blood. In addition, she stated that it was standard practice to have a doctor on call. Officer Squires witnessed the nurse taking the blood sample.

This is the first time this court has been asked to interpret the phrase "under the direction and supervision of a physician" in § 5-65-204(d). However, other jurisdictions with similar statutes have considered this issue. In *People v. Mari*, 528 P.2d 917 (1974), the Colorado Supreme Court addressed an appellant's argument that the results of his blood alcohol test should not have been introduced into evidence because the blood was drawn by a medical technologist and no physician or registered nurse was present at the time the sample was taken. Under Colorado law, a physician, registered nurse, or a person whose normal duties include withdrawing blood samples under the supervision of a physician or registered nurse are entitled to withdraw blood for the purpose of determining the blood alcohol content. In upholding that trial court's finding that the medical technologist was a qualified person under the statute, the court stated the following:

We do not read the statute to require on-the-spot supervision of a doctor or registered nurse, on the contrary, if her normal duties as a medical technologist include withdrawing blood samples while she is under the supervision of a physician or registered nurse, she qualifies notwithstanding the fact that supervision was not present at this time. We read the "under supervision" clause as referring to any "normal duties" and not as a requirement that the supervision be present at the time the technician withdraws the blood.

*Id.* at 919; *see also People v. Jenne*, 168 Mich. App. 518, 425 N.W.2d 116 (1988) (court interpreted "under the direction of a licensed physician" not to require personal presence of a physi-

cian when a medical technician withdrew blood); *People* v. *O'Doherty*, 70 N.Y.2d 479, 517 N.E.2d 213 (1987) (court held that physician is not required to be actually present, observing the procedure, when the laboratory technician draws blood sample for the purposes of conducting an alcohol content test).

■ Clearly, here, a registered nurse's normal duties include taking blood samples, and as she testified she followed the standard hospital policy in extracting the appellant's blood sample. As noted in *O'Doherty*, 70 N.Y.2d 479, 517 N.E.2d 213, to require a physician to be present when the blood sample is withdrawn would render useless the provision allowing nonphysicians to take the blood sample in the first place. If the doctor's presence is required, he or she could just take the sample. In sum, we decline to interpret "under the direction and supervision of a physician" so narrowly as to require that a physician be actually present. Under the facts of this case, a registered nurse taking the sample following standard hospital policy with a physician on call meets the requirements and purpose of § 5-65-204(d).

Next, the appellant argues that the trial court erred in admitting the blood alcohol test results, because the state did not show that the proper procedure was used under the Arkansas Department of Health Regulation for Blood Alcohol Testing, § 3.20. In pertinent part, this regulation provides the following:

> (T)he skin at the area of puncture shall be thoroughly cleansed and disinfected with an aqueous solution of nonvolatile antiseptic such as benzalkonium chloride (zephiran). Alcohol or other volatile organic disinfectant solutions shall not be used as a skin antiseptic or to clean hypodermic needles, syringes, or containers.

At the trial, Nurse Richmond testified that she followed standard hospital procedure in taking the blood sample and cleaned the area of the puncture with a nonalcohol product, hydrogen peroxide. On cross-examination, she was asked by the appellant's attorney whether hydrogen peroxide was a volatile chemical agent, and she answered no. However, when the appellant's attorney repeatedly asked her if the substance was volatile, she admitted that she was not sure.

■ Through Nurse Richmond's testimony, the state met

its proof required under regulation § 3.20. She testified that, in accordance with standard hospital procedure, she used a nonalcohol substance to clean the puncture area. And while appellant's attorney questioned Richmond's certainty on whether the substance used was or was not nonvolatile, such impeachment goes to the weight to be given her testimony, not its admissibility. *See State* v. *Green*, 389 N.W.2d 557 (Neb. 1986); *State* v. *Steinbrunn*, 774 P.2d 55 (Wash. App. 1989); *see generally* Annotation, *Blood Alcohol Test — Prescribed Methods* 96 A.L.R.3d 745 § 10 (1980).

■ Even if we were to agree with the appellant's argument that the trial judge erred in admitting his blood alcohol test results into evidence, we would not reverse because there is competent evidence sufficient to support the appellant's DWI conviction. *Butler* v. *Dowdy*, 304 Ark. 481, 803 S.W.2d 534 (1991). As noted in the beginning of the opinion, Officer Spires testified that the appellant smelled strongly of alcohol, and he had red eyes and poor balance when he exited his vehicle. In addition, the appellant admitted to having consumed "a couple of beers," and an empty beer can was found in his truck. In fact, the officer testified that he had no doubt in his mind that the appellant was intoxicated and was a danger to other persons.

For the reasons stated above, we affirm.