2011 Ark. App. 446

**Jennifer Irene BATES, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–1299.**

Court of Appeals of Arkansas.

June 22, 2011.

Timothy R. Leonard, Hamburg, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Jennifer Bates appeals her conviction by a Drew County jury on charges of negligent homicide and aggravated assault, for which she was sentenced to sixteen years' imprisonment in the Arkansas Department of Correction. She argues that the circuit court erred when it allowed the introduction of the results of her blood-alcohol test into evidence because the State failed to provide evidence that the blood was drawn by a physician or a person acting under the direction and supervision of a physician as required by Arkansas Code Annotated section 5–65–204 (Repl.2005). Although we find merit in her argument, we affirm the convictions.

On September 22, 2008, appellant was the driver of a vehicle involved in an accident that caused the death of Dustin Ferguson. An information was filed charging appellant with [2]the negligent homicide of Ferguson and the aggravated assault of Nicole Black. The information was later amended to add the alternative charge of the manslaughter of Ferguson.

Following the accident, appellant was transported to Jefferson Regional Medical Center (JRMC) in Pine Bluff. James Brian Vance, an employee of JRMC, drew blood from appellant. He was in room trauma-ten in the emergency room when he drew the blood.

Rebecca Lynn Baker, a chemist at the Arkansas Department of Health's Office of Alcohol Testing, tested appellant's blood. Appellant's counsel objected to the introduction of the blood-test results because no evidence was presented that the blood was drawn under the supervision of a physician as required by statute. The objection was overruled, and the results were introduced indicating that appellant's blood-alcohol level was 0.27.

A jury returned a verdict of guilty on negligent homicide, manslaughter, and aggravated assault. Following the guilty verdicts, the circuit court went forward with the negligent-homicide conviction rather than manslaughter. The jury returned with sentences of ten years for negligent-homicide and six years for aggravated assault and recommended that they run consecutively. A judgment and disposition order noting convictions of negligent homicide and aggravated assault and imposing the jury's sentencing recommendation was entered on August 25, 2010. Appellant timely filed her notice of appeal on September 22, 2010.

■ The decision to admit evidence is within the trial court's discretion. *Stott v. State,* 77 Ark.App. 329, 82 S.W.3d 170 (2002). We will not reverse a trial court's ruling on the admission of evidence absent an abuse of that discretion. *Id.*

[3]Negligent homicide is defined in Arkansas Code Annotated section 5–10–105 (Repl.2006) as follows:

(a)(1) A person commits negligent homicide if [she] negligently causes the death of another person, not constituting murder or manslaughter, as a result of operating a [vehicle]:

(A) While intoxicated;

(B)(i) If at that time there is an alcohol concentration of eight-hundredths (0.08) or more in the person's [blood] based upon the definition of [blood] in § 5–65–204, as determined by a chemical test of the person's [blood].

(ii) The method of chemical analysis of the person's [blood] shall be made in accordance with [§ 5–65–204].

(2) A person who violates subdivision (a)(1) of this section is guilty of a Class C felony.

Manslaughter, a Class C felony, occurs when a person recklessly causes the death of another person. Ark.Code Ann. § 5–10–104(a)(3), (c) (Repl.2006). Aggravated assault, a Class D felony, occurs when a person, under circumstances manifesting extreme indifference to the value of human life, engages in conduct that creates a substantial danger of death or serious physical injury to another person. Ark.Code Ann. § 5–13–204(a)(1), (b) (Repl.2006). Arkansas Code Annotated section 5–65–204(d)(i) specifically provides that when a person submits to a blood test at the request of a law enforcement officer under a provision of this section, blood may be drawn by a physician or a person acting under the direction and supervision of a physician.

Arkansas Code Annotated section 5–65–204(d)(i) has been interpreted to not require a physician to be actually present when the blood is drawn. *See Gavin v.*

*State*, 309 Ark. 158, 827 S.W.2d 161 (1992). In *Gavin*, a registered nurse, whose normal duties included taking blood samples, testified that she followed the standard hospital policy in extracting the blood. Although a physician was on call, one was not present when she drew the blood. *Id.* at 160, 827 S.W.2d at 162. Our supreme court determined that a registered nurse taking the sample following standard hospital policy with a physician on call met the requirements and purpose of section 5-64-204. *Id.* at 160, 827 S.W.2d at 163.

In this case, it is undisputed that Vance withdrew appellant's blood at JRMC following the accident. Vance testified that he was employed at JRMC and had been for twelve years. Vance further testified that he was in room trauma-ten in the emergency room when he took the blood. But no evidence was presented as to Vance's occupation at JRMC, his qualifications with respect to drawing blood, or that drawing blood from patients was within his normal job duties. There was no evidence presented that a physician was present at the time appellant's blood was drawn, either in the building or on call. We note that from the record before us, Vance never mentioned the word "physician" or "doctor" during the course of his testimony.

*Gavin* is distinguishable from the facts of this case in that there is no evidence before us that Vance was a registered nurse, otherwise qualified to withdraw blood, or performing his normal duties of withdrawing blood from a patient. Moreover, there was no evidence presented to the circuit court that Vance was acting under the supervision or direction of a physician at the time appellant's blood was drawn. Accordingly, we agree that it was error for the circuit court to allow the introduction of the blood-test results into evidence.

We, however, affirm appellant's convictions based upon additional evidence that was presented to the circuit court. Amanda Marie Pope, a waitress at a local Sonic restaurant, testified that on September 22, 2008, appellant was at Sonic in her extended-cab Silverado truck. Pope explained that she saw appellant drinking straight from two different vodka bottles, the first of which she was "turning up" to drink from, and both of which appellant later threw out of the vehicle onto the ground. Pope indicated that appellant seemed to be "under the influence," and Pope noted that she mentioned to her manager, Brad Johnson, that appellant had slurred speech. Pope testified that she tried to get appellant to drink some coffee and stay a bit longer before driving away, but appellant drove away without doing so, nearly causing a wreck in the Sonic parking lot. Pope explained that she gave the second vodka bottle to Johnson for safekeeping "just in case something happened." The accident involving Ferguson occurred approximately ten minutes after appellant left Sonic.

Nicole Black testified that, on the day in question, she was traveling south on Highway 425 in the outside lane near Ferguson's truck. She drew on a diagram and explained to the jury where the vehicles were before and after the crash. Black testified that, just before the crash, appellant's truck was traveling at a rate of approximately seventy miles per hour, passing over the turning lane and then hitting Ferguson's truck head on. She testified that Ferguson's truck was hit so hard that it turned around in the street sideways and that appellant's truck flipped and headed toward Black's car, nearly hitting her and making her fear for herself and for her four-year-old son who was in the car with her. Black explained that debris from Ferguson's truck flew into her car through an open window, including

a tire, glass, oil, and antifreeze. State's Exhibit 4 depicted the damage to Black's car, while State's Exhibit 5 depicted the damage to Ferguson's truck.

Yvette Jackson testified that, on the same day, she was stopped at a traffic light on Highway 425 when a silver-gray truck drove through the light very fast and at an unsafe speed, coming toward her and then driving in the turn lane. She explained that the truck did not hit her, but that she turned around, looked out the back of her car, and witnessed an impact between the truck and another vehicle. Jackson identified the truck as appellant's, and she marked appellant's route of travel in red and the location of the vehicle appellant hit in green on a diagram for the jury.

Darrin Buffington testified that around 2:45 p.m. on the day in question he was traveling northbound on Highway 425 when he saw appellant's truck pass him in the turn lane driving at "a pretty good speed," driving faster than regular traffic. He testified that appellant's truck then swerved over into the southbound traffic and almost hit another car, then swerved back into the passing lane. Buffington testified that shortly afterward, appellant's truck went back over into the southbound lane and hit an oncoming brown truck belonging to Ferguson, which had just pulled out onto the roadway from the Walmart parking lot. Buffington also marked the path of appellant's truck on a diagram for the jury.

Cynthia Leslie testified that she witnessed the wreck while driving north on Highway 425 on the day in question. She testified that she saw appellant's truck "zoom by" her in the center lane, then heard the impact when it hit another vehicle. Leslie explained that she saw appellant's truck flip up in the air, turn around, and land upside down.

James Gathings also testified that he witnessed the crash. He was traveling north on Highway 425 when he saw in his rear-view mirror appellant's truck coming into the center passing lane and gaining on him very rapidly. About the time the truck got alongside him, he heard the collision and saw the truck go airborne in front of him and appellant being ejected from the truck.

State's Exhibit 6, Ferguson's death certificate, was admitted into evidence by stipulation to show the cause of death—traumatic head-and-neck injuries in a two-vehicle accident. Trooper Clayton Moss of the Arkansas State Police testified that he responded to the crash scene. He identified photos of appellant's and Ferguson's vehicles taken after the crash, noting that the photo in State's Exhibit 9 showed a linear perspective of how far away from the impact appellant's vehicle finally came to rest and testifying that the distance was affected by the speed she was driving. Moss testified that State's Exhibit 12 was a page from his accident report with a diagram showing where the vehicles crashed and where they landed afterward. Moss testified that Ferguson had no alcohol in his blood at the time of the accident. He also testified that Ferguson's truck was traveling in the proper lane at the time of the accident, while appellant's truck was not, so that appellant caused the crash.

Based upon the above-referenced evidence, we hold that overwhelming evidence of appellant's inebriation was introduced to the circuit court. Moreover, the relevant negligent-homicide statute, Arkansas Code Annotated section 5–10–105, requires *either* intoxication *or* a blood-alcohol level of .08.

Appellant was charged with negligent homicide under two separate theories. In pertinent part, the information states: "[Appellant] did negligently cause the death of Dustin Ferguson as a result of operation a motor vehicle while intoxicated

or with an alcohol concentration in excess of .08%." While the only evidence regarding the concentration of alcohol in appellant's blood came from the blood test, there was sufficient evidence at trial to support appellant's conviction on the alternative theory. As noted above, there was overwhelming evidence of appellant's intoxication as required by the negligent-homicide statute.

Affirmed.

HART, J., agrees.

ABRAMSON, J., concurs.

RAYMOND R. ABRAMSON, Judge, concurring.

I agree with the court that the State presented substantial evidence that Bates negligently caused the death of Dustin Ferguson as a result of operating a motor vehicle while intoxicated and would therefore affirm her negligent-homicide conviction on that basis. I write separately because I disagree with the court's holding regarding the admission of Bates's blood-alcohol test at trial. I find no error in the circuit court's decision on this point and would affirm Bates's negligent-homicide conviction on this alternative basis as well—that Bates negligently caused the death of Dustin Ferguson as a result of operating a motor vehicle while she had a blood-alcohol concentration of .08 or more.

Code section 5-65-204(d)(1) provides, "[w]hen a person submits to a blood test at the request of a law enforcement officer under a provision of this section, blood may be drawn by a physician or a person acting under the direction and supervision of a physician." In *Gavin v. State*, 309 Ark. 158, 827 S.W.2d 161 (1992), Gavin challenged the admission of his blood-alcohol test results because there was no doctor present, though one was on-call, when a registered nurse drew his blood. Our supreme court held: "[W]e decline to interpret 'under the direction and supervi-

sion of a physician' so narrowly as to require that a physician be actually present." *Gavin*, 309 Ark. at 161, 827 S.W.2d at 163.

Here, James Vance testified that he is a twelve-year employee of Jefferson Regional Medical Center. He assisted the police in obtaining a blood sample from Bates after she was brought into the ER. Vance said that Bates was in trauma room ten when he took her blood and that Bates was not awake at the time. Vance said there was an instruction form that came with the kit and he described the particular procedure he followed in detail. Vance testified that after he drew Bates's blood he packaged it according to the instructions and gave it to the waiting trooper. Trooper Bonita Swint testified that she observed Vance draw Bates's blood and that Vance handed her the packaged blood sample when he was finished.

At trial, Bates objected to the introduction of her blood-alcohol test results. She argued that there had been no testimony that Vance was acting under the direction and supervision of a physician when he drew her blood. She further argued that Vance had not testified about his qualifications or stated what his job title is. The circuit court overruled Bates's objection, commenting

> It was an ER draw and that's—you have an ER doctor that's on call, whether he's standing in another room or in another part of the hospital, routinely in these cases they're not going to pull a doctor in just to draw some blood. It's all done under the supervision of the hospital and/or the doctor on call. We've all been to the emergency room. Furthermore, there's no showing here of prejudice or harm. Just because a doctor wasn't standing next to the defendant when the blood was taken from her body.

I agree with the circuit court's analysis and conclusion. In Bates's case, a twelve-year hospital employee testified—in detail—about the procedure he followed in extracting Bates's blood. He further testified that he drew Bates's blood when she was in a trauma room at Jefferson Regional Medical Center, while a state trooper watched the entire process unfold. As the circuit court pointed out, a hospital ER is, of course, supervised by a doctor. And our supreme court made it clear in *Gavin* that "acting under the direction and supervision of a physician" does not mean that a physician has to be looking over the blood-drawer's shoulder. Indeed, whether the supervising doctor is on-call, in the next trauma room, or in a different wing of the hospital makes no difference under *Gavin.* Further, there is no requirement in the statute that the blood-drawer be a registered nurse or have any other particular qualifications. The only requirement is that the blood-drawer be "acting under the direction and supervision of a physician."

In short, I see no statutory violation and would therefore affirm the circuit court's admission of Bates's blood-alcohol test. And with the admission of the test, there was substantial evidence that she negligently caused the death of Dustin Ferguson as a result of operating a motor vehicle while she had a blood-alcohol concentration of .08 or more. Ark.Code Ann. § 5–10–105(a)(1)(B)(i). I would therefore affirm Bates's negligent-homicide conviction on this basis as well.