

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–13–868

| | |
|---|---|
| MICHAEL GENE FOWLER<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** September 10, 2014<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CR-12-852]<br><br>HONORABLE CHARLES E. CLAWSON, JR., JUDGE<br><br>AFFIRMED; REMANDED WITH INSTRUCTIONS |

## WAYMOND M. BROWN, Judge

Appellant appeals his conviction by jury of negligent homicide, for which he was sentenced to forty years in the Arkansas Department of Correction.[1] His sole point on appeal is that the State failed to prove an essential element of negligent homicide, specifically, that it failed to prove that his blood alcohol content (BAC) was 0.08 or more at the time of the accident. We affirm.

On August 15, 2012, after drinking beer and whiskey with Matthew Ballard and Zachary Koontz at a swimming hole at Cadron Creek,[2] appellant drove the three of them from the swimming hole toward Morrilton. Appellant drove at a high rate of speed despite being asked by his friends to slow down. While speeding, appellant hit and killed a

---

[1]Appellant was also convicted of failure to stop after accident with injury or death and driving while intoxicated. Appellant does not appeal these convictions.

[2]Two other unnamed persons were at the creek and were also drinking with appellant, Ballard, and Koontz. They had also brought alcohol to the swimming hole.

SLIP OPINION

twelve-year-old boy who had been riding an ATV. Ignoring requests from his passengers to stop and render aid to the child, appellant continued to flee the scene, even when threatened at knifepoint by Ballard. At some point, he pulled over to let Ballard out. He then continued driving, intending to take Koontz to a local hospital.

Pursuant to a "be on the look out" report, appellant was pulled over approximately one hour after the accident. He was taken to a Conway Regional Medical Center to have his blood drawn as required by state law. His blood was drawn at 8:30 pm. A later test on the drawn blood showed his blood alcohol content (BAC) as 0.16.

On August 17, 2012, the State filed a felony information charging appellant with negligent homicide due to intoxication pursuant to Arkansas Code Annotated section 5-10-105(a)(1)(A).[3] An amended felony information was filed on March 13, 2013, changing the charge to negligent homicide due to a BAC of 0.08 or more pursuant to Arkansas Code Annotated section 5-10-105(a)(1)(B)(i).

A jury trial was conducted on March 20 and 21, 2013. After the State rested its case, and again after appellant rested his case, appellant moved for a directed verdict on the grounds that the State failed to prove "that his blood alcohol content at the time of the accident was .08%, in other words, DWI, and that his intoxication was in fact the cause of the accident." The court denied both motions. The jury returned a verdict of guilty of negligent homicide. It recommended a sentence of forty years in the Arkansas Department of Correction and a fine of $15,000.00. A sentencing order reflecting the jury's

---

[3](Supp. 2011).

recommendation was entered on March 27, 2013. It is from this order that appellant timely appeals.

Appellant argues that the trial court erred as a matter of law in denying his motion for directed verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence.[4] In a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the conviction.[5] This court will affirm a conviction when there is substantial evidence to support it, and substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture.[6] Moreover, the jury is responsible for determining the weight and credibility of evidence.[7]

The elements of negligent homicide, as charged in this case, are found in Arkansas Code Annotated section 5-10-105:

> (a)  (1) A person commits negligent homicide if he or she negligently causes the death of another person, not constituting murder or manslaughter, as a result of operating a vehicle, an aircraft, or a watercraft:
>
> . . . .

---

[4]*Linn v. State*, 84 Ark. App. 141, 144, 133 S.W.3d 407, 408 (citing *Farrelly v. State*, 70 Ark. App. 158, 15 S.W.3d 699 (2000)).

[5]*King v. State*, 2014 Ark. App. 81, at 2, 432 S.W.3d 127, 129 (citing *Daniels v. State*, 2012 Ark. App. 9, at 1–2).

[6]*Woods v. State*, 2013 Ark. App. 739, at 4-5, 431 S.W.3d 343, 347 (citing *Richey v. State*, 2013 Ark. App. 382, at 2).

[7]*Id.*



(B)  (i) If at that time there is an alcohol concentration of eight hundredths (0.08) or more in the person's breath or blood based upon the definition of alcohol concentration in § 5-65-204, as determined by a chemical test of the person's blood, urine, breath, saliva, or other bodily substance.[8]

Arkansas Code Annotated section 5-2–202(4) states that:

(A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

(B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.[9]

For his sufficiency argument, appellant specifically argues that the State failed to present any evidence of an essential element of its case, namely the presence of .08 percent alcohol in appellant's blood at the time of the accident. Arkansas Code Annotated section 5-10-105(a)(1)(B)(ii) states that "the method of the chemical test of the person's blood, urine, saliva, breath, or other bodily substance shall be made in accordance with §§ 5-65-204 and 5-65-206." Arkansas Code Annotated section 5-65-204 states that "[w]hen a person submits to a blood test at the request of a law enforcement officer under a provision of this section, blood may be drawn by a physician or a person acting under the

---

[8](Supp. 2011).

[9](Repl. 2011).

direction and supervision of a physician."[10] A physician is not required to be actually present when the blood is drawn.[11]

Arkansas Code Annotated section 5-65-204 goes on to state that a chemical test made to determine the presence and amount of alcohol in a person's blood shall be performed according to a method approved by the Department of Health and State Board of Health or by an individual possessing a valid certificate issued by the department for this purpose in order to be considered valid.[12] Arkansas Code Annotated section 5-65-206, in pertinent part, permits evidence of the amount of alcohol in the defendant's blood at the time or within four (4) hours of the alleged offense, as shown by chemical analysis of the defendant's blood.[13]

In this case, appellant was involved in a hit and run accident, killing a twelve-year-old boy, at approximately 5:30 pm on August 15, 2012. Appellant was stopped by police at around 6:30 pm. He was transported by Trooper Coty Williams, of the Arkansas State Police, to Conway Regional Medical Center where appellant's blood was drawn by phlebotomist Kandi Cudd at approximately 8:30 pm. Trooper Williams was present for the draw. Trooper Williams took possession of appellant's drawn blood and delivered it to Sergeant Chad Wooley, Criminal Investigator with the Criminal Investigation Division of

---

[10]Ark. Code Ann. § 5-65-204(c)(1) (Repl. 2009).

[11]*Bates v. State*, 2011 Ark. App. 446, at 4, 384 S.W.3d 654, 656 (citing *Gavin v. State*, 309 Ark. 158, 827 S.W.2d 161 (1992)).

[12]Ark. Code Ann. § 5-65-204(b)(1)(A).

[13]Ark. Code Ann. § 5-65-206(a) (Repl. 2009).

SLIP OPINION

the Faulkner County Sheriff's Office.[14]   Sergeant Wooley took possession and locked the drawn blood in the refrigerator. Investigator Angie Wooley, evidence custodian and the only person with a key to the refrigerator, submitted the drawn blood to the Department of Alcohol Testing on September 25, 2012.  Kristin Parsons, chemist for the Office of Alcohol Testing of the Arkansas Department of Health, tested appellant's drawn blood and stated that the results showed that appellant's BAC was 0.16.

The State, while maintaining that appellant's blood was drawn within the statutory time period, also argues that "when a person finishes consuming alcohol, his or her blood-alcohol level concentration will decrease," citing *Elam v. State*.[15]  However, in *Hayden v. State*, citing *Elam* among other cases, this court specifically declined to extend "the proposition that the unquestioned laws of nature compel a conclusion that appellant's blood-alcohol content was [either] decreasing or increasing at the time" a breathalyzer test was given.[16] By analogy, this court declines to extend the same concept to blood tests.

Regarding the statute in *Elam*, the court noted the following:

[I]t provides that if the test is administered within two hours of the arrest and the test shows that the defendant has a blood alcohol content of 0.05% or less he shall be presumed not to be under the influence of alcohol. If the defendant has a blood alcohol content in excess of 0.05% but less than 0.10% there should be no presumption whether the defendant was or was not under the influence of intoxicants. The statute is silent, however, regarding situations in which the test is

---

[14]Sergeant Wooley noticed that the nurse had not signed the necessary paperwork for the blood draw, so Trooper Williams took the paperwork to the nurse, who then properly signed it, and returned the paperwork to Sergeant Wooley.

[15]286 Ark. 174, 690 S.W.2d 352 (1985).

[16]103 Ark. App. 32, 286 S.W.3d 177 (Ark. App. 2008).



taken two hours or more after the arrest, and the result reflects a blood alcohol content of 0.10% or more.[17]

In this case, the statute is as follows:

> (1) If there was at that time an alcohol concentration of four hundredths (0.04) or less in the defendant's blood, urine, breath, or other bodily substance, it is presumed that the defendant was not under the influence of intoxicating liquor; and

> (2) If there was at the time an alcohol concentration in excess of four hundredths (0.04) but less than eight hundredths (0.08) by weight of alcohol in the defendant's blood, urine, breath, or other bodily substance, this fact does not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but this fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.

Likewise, the statute is silent, making no presumption one way or another, where the BAC is more than 0.08, as is the case in this matter. Where the statute defines what BAC cannot be presumed as intoxication as well as the range of BAC that can be used as a factor in proving intoxication, it is reasonable to assume that a BAC above the referenced amounts may alone be determined to be proof of intoxication. Accordingly, based solely on the fact that the blood was drawn within the timeframe permitted by statute and the BAC was 0.16, twice the legal limit, we find that there was substantial evidence to support appellant's conviction.

We note a clerical error in the sentencing order. The box indicating that appellant was sentenced as a habitual offender on his negligent-homicide sentence is not checked.[18]

---

[17]286 Ark. at 176, 690 S.W.2d at 353.

[18]The boxes indicating that that appellant was sentenced as a habitual offender on his failure to stop after accident with injury and driving while intoxicated sentences also were not checked. Accordingly, the circuit court should correct these errors as well.

Thus, we affirm the conviction but remand to the circuit court with instructions to correct the sentencing order.

Affirmed; remanded with instructions.

WYNNE and HIXSON, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., and *Richmond Giles*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.