# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHAD JAMES DONAGHY,

        Defendant-Appellant.

UNPUBLISHED
October 13, 2015

No. 322677
St. Clair Circuit Court
LC No. 12-002666-FH

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of operating a vehicle while visibly impaired (OWVI), MCL 257.625(3), third offense, MCL 257.625(9)(c), (11)(c),[1] and operating a vehicle with a suspended or revoked license (OWSL), occurring after a prior conviction, MCL 257.904(3)(a). The trial court sentenced defendant as a second habitual offender, MCL 769.10, to 18 to 90 months for the OWVI conviction, and to one day in jail for the OWSL conviction. Defendant appeals as of right. We affirm.

On May 7, 2012, Deputy Bueche of the St Claire County Sheriff's Department was dispatched to a Walmart store as the result of a 911 call placed by Nicholas Stine. Stine testified that at approximately 2:00 a.m., while he was headed northbound on M-25, he observed a dark-colored Chrysler cross the centerline, almost hitting him "head-on." Stine followed the vehicle and witnessed the driver, later identified as defendant, enter the Walmart parking lot by jumping a divider island and then stumble into the store. When defendant left the store, he was followed by Bueche, who witnessed defendant crossing over the lines on the road, causing Bueche to effectuate a traffic stop and perform field sobriety tests. During their interaction, defendant alerted Bueche to the fact that defendant was a registered medical marijuana patient and provided Bueche with his identification card.

Defendant was placed under arrest and refused a blood-alcohol test. Bueche sought and secured a search warrant and defendant's blood was then drawn by Katie Kacafirek, a nurse

---

[1] Defendant was charged under MCL 257.625(1)(a) (operating while under the influence), but after being instructed on the lesser included offense of OWVI, see *People v Lambert*, 395 Mich 296; 235 NW2d 338 (1975), the jury returned a guilty verdict for OWVI.

employed by the jail who worked under the supervision of a physician. The blood-test results revealed that defendant's blood-alcohol content was 0.05 grams of alcohol per 100 milliliters of blood, and that defendant had tetrahydrocannabinol (THC), the active component of marijuana, alprazolam (Xanax), methadone, and zolpidem (Ambien) in his system.

## I. BLOOD DRAW IN A MEDICAL ENVIRONMENT OR FACILITY

Defendant argues that the trial court erred in not excluding the results of his blood test, which was done in a room at the jail adjacent to the booking area, because MCL 257.625a(6)(c) required that the blood be drawn in a "medical environment" and the search warrant referenced a blood draw in "the most convenient medical facility." "This issue . . . raises a question of statutory interpretation, which is reviewed de novo on appeal." *People v Lanzo Const Co*, 272 Mich App 470, 474; 726 NW2d 746 (2006) (citation omitted). A trial court's decision regarding the admission of evidence is reviewed for an abuse of discretion. *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). "This Court review[s] de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Mungo (On Second Remand)*, 295 Mich App 537, 545; 813 NW2d 796 (2012) (citation and quotation marks omitted) (alteration added by *Mungo* Court).

Defendant argues that his blood was not drawn in a "medical environment," but rather, in a dirty, chaotic environment. MCL 257.625a(6)(c) states in relevant part:

> . . . Only a licensed physician, or an individual operating under the delegation of a licensed physician under section 16215 of the public health code, 1978 PA 368, MCL 333.16215, qualified to withdraw blood and acting in a medical environment, may withdraw blood at a peace officer's request to determine the amount of alcohol or presence of a controlled substance or other intoxicating substance in the person's blood, as provided in this subsection.

This provision is part of the procedural requirements of the implied-consent statute, MCL 257.625c(1), which states that "[a] person who operates a vehicle . . . is considered to have given consent to chemical tests of his or her blood, breath, or urine for the purpose of determining the amount of alcohol or presence of a controlled substance or other intoxicating substance, or any combination of them . . . ." See also MCL 257.625c(3) (stating that "[t]he tests shall be administered as provided in section 625a(6)"). "[T]he implied consent statute promises protections to a defendant in exchange for which he allows a blood sample to be taken." *Manko v Root*, 190 Mich App 702, 704; 476 NW2d 776 (1991). However, "[w]hen a blood sample is taken pursuant to a search warrant, the issue of consent is removed, and the implied consent statute is not applicable. The warrant procedure exists independently of the testing procedure set forth in the implied consent statute." *Id.* (citations omitted). See also *People v Pittinger*, 105 Mich App 736, 743; 307 NW2d 715 (1981) (stating, "Admission is unrestricted when a test is conducted pursuant to a search warrant and not under the statute itself"); *People v Callon*, 256 Mich App 312, 322-323; 662 NW2d 501 (2003) (explaining that when the defendant's "blood

was obtained pursuant to a search warrant . . . , the implied-consent statute[] does not govern admissibility of the test results") (citations omitted).

In this case, the blood test was taken pursuant to a search warrant. Accordingly, noncompliance with MCL 257.625a(6)(c) does not provide defendant with grounds for relief. See *Callon*, 256 Mich App at 323 (rejecting the defendant's argument that the test results should be excluded because MCL 257.625a(6)(c)'s requirement that the blood be drawn by a "licensed physician, or an individual operating under the delegation of a licensed physician" was allegedly not followed and the blood was drawn pursuant to a search warrant).

Where a defendant refuses consent and the blood sample is obtained pursuant to a search warrant, "the rules of evidence, as limited by constitutional principles, govern . . . ." *Id*. See, generally, *People v Cords*, 75 Mich App 415; 254 NW2d 911 (1977) (discussing the potential constitutional implications in taking a person's blood). Defendant argues that error of a constitutional nature occurred where his blood was drawn in the "jail," not, as stated in the warrant, "at the most convenient medical facility."

Preliminarily, in *Callon*, this Court entertained the argument that if, as in this case, the warrant references the implied-consent statute, the statute may be incorporated into the warrant. See *Callon*, 256 Mich App at 323. The statute does not define the phrase "medical environment." *Random House Webster's College Dictionary* (1997) defines "medical" as "pertaining to the science or practice of medicine" and "environment" as "the aggregate of surrounding things, conditions, or influences; surroundings." See *Stabley v Huron-Clinton Metro Park Auth*, 228 Mich App 363, 367; 579 NW2d 374 (1990). In light of these broad definitions and defendant's failure to impugn the reliability of the sample,[2] we conclude that the trial court did not err in concluding that MCL 257.625a(6)(c) was satisfied. Defendant concedes that the nurse who drew his blood was "under the delegation of a licensed physician." Further, the trial court appropriately considered that defendant's blood was drawn in a room to the side of the Assessment room, i.e., the booking area, that the nurse performing the blood draw frequently does so and followed protocol, and that while there is a medical office within the jail, it is not uncommon for the nurses to provide treatment throughout the jail when necessary for the safety of inmates, arrestees, and the staff. Accordingly, to the extent that the implied-consent statute's provisions were incorporated into the warrant, MCL 257.625a(6)(c) was not violated because the blood draw was performed in a "medical environment."

We note that the warrant references the "most convenient medical facility" and that the definition of "facility" is arguably narrower than "environment." See *Random House Webster's College Dictionary* (1997) (defining "facility" as "something designed, built, or installed to afford a specific convenience or service"). However, based on testimony regarding the purpose

---

[2] See *People v Jenne*, 168 Mich App 518, 521-522; 425 NW2d 116 (1988) (stating that the purpose of MCL 257.625a "is to ensure the reliability of a person's blood sample"), and *Gard v Mich Produce Haulers*, 20 Mich App 402, 407; 174 NW2d 73 (1969) (stating that MCL 257.625a, "including the requirement that the blood be withdrawn in a medical environment," provides safeguards as to the reliability of blood sample analyses).

and use of the separate room by nursing staff to perform blood draws, there is no reason to conclude that the room where defendant's blood was drawn was not used as a "medical facility." Moreover, the warrant also indicates that the blood draw was to be consistent with MCL 257.625a, wherein the broader term, "environment," is used, which lessens the import of any distinction between the term "facility" and "environment." Accordingly, the trial court did not err in declining to suppress the blood-test results.

## II. EXPERT TESTIMONY TO INTERPRET BLOOD-TEST RESULTS

Defendant next argues that the trial court erred in denying his motion to exclude the blood-test results as irrelevant and confusing to the jury where the prosecution did not present expert testimony to explain how his levels of intoxicating substances could affect his ability to operate his vehicle for the purposes of establishing that he was driving under the influence of intoxicating substances, MCL 257.265(1)(a), or while visibility impaired due to such substances, MCL 257.625(3). We disagree.

This Court reviews the "trial court's evidentiary rulings under MRE 401 and MRE 403 for an abuse of discretion." *People v Sabin*, 463 Mich 43, 60; 614 NW2d 888 (2000) (citation omitted). "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

The "[d]etermination of relevancy . . . does not alone determine admissibility." *People v Robinson*, 417 Mich 661, 664; 340 NW2d 631 (1983). See *People v Musser*, 494 Mich 337, 356; 835 NW2d 319 (2013), citing MRE 402. "Specifically, under MRE 403, a trial court has a 'historic responsibility' to 'always determine whether the danger of unfair prejudice to the defendant substantially outweighs the probative value of the evidence sought to be introduced before admitting such evidence.' " *Id.* at 356-357, quoting *Robinson*, 417 Mich at 665, 666. "Rule 403 does not prohibit prejudicial evidence; only evidence that is unfairly so. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

The trial court determined that the lack of expert testimony went to the weight, not the admissibility, of the evidence. Implicit is the trial court's conclusion that the jury was free to discount the weight of the test results in the absence of such testimony. That analysis is consistent with the general notion that blood tests are admissible as relevant under MRE 401 "[w]here there is 'any tendency' that the test results make the existence of a defendant's state of intoxication at the time of the offense more or less probable than without the evidence, . . . unless it is properly excluded under MRE 403." *People v Campbell*, 236 Mich App 490, 504; 601 NW2d 114 (1999). And if admissible, "a defendant would then be free to argue the relative merit of the evidence to the trier of fact." *Id*.

To find defendant guilty of OWVI, "the jury would have first had to accept the police officer's testimony that defendant's driving was visibly impaired," and "the jury would have had to believe that defendant's impairment was caused by the consumption of intoxicating liquor[]"

or a combination of intoxicating substances. *People v Fett (On Remand)*, 261 Mich App 638, 640-641; 684 NW2d 369 (2004). The presence of the intoxicating substances in defendant's system, evidenced by the blood-test results, has a tendency to show that any visibly impaired driving was, in fact, caused by the consumption of such substances. Thus, the blood-test results were relevant pursuant to MRE 401. See *People v Miller*, 357 Mich 400, 407; 98 NW2d 524 (1959) (stating that a "suspect's sample of urine . . . subjected to a test having general scientific recognition, with results correlated to the probable blood alcohol concentration at the time of the violation charged, is properly admissible as bearing upon the issue of intoxication").

We agree with the trial court that this issue goes to weight, not admissibility. But even if we were to adopt defendant's premise regarding the need for expert testimony, the error in admitting the blood-alcohol tests without the necessary expert testimony would be harmless in light of the evidence of impaired driving independent of the blood-test results, which is further detailed in the discussion of the next issue.

III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to sustain his conviction under MCL 257.625(3). This Court reviews a sufficiency-of-the evidence claim de novo. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict," and "[t]he scope of review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *People v Patterson*, 428 Mich 502, 525; 410 NW2d 733 (1987) (internal quotation marks and citation omitted). In viewing "the evidence in a light most favorable to the prosecutor," *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006), this Court " 'must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt,' " *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992), quoting *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979).

Defendant was convicted under MCL 257.625(3), which states:

A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of alcoholic liquor, a controlled substance, or other intoxicating substance, or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance, the person's ability to operate the vehicle is visibly impaired. If a person is charged with violating subsection (1), a finding of guilty under this subsection may be rendered.

To prove OWVI, defendant's ability to drive must be shown to be "so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary,

careful and prudent driver." *People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975). See also *Oxendine v Secretary of State*, 237 Mich App 346, 354; 602 NW2d 847 (1999).

In this case, the 911 caller and the responding deputy testified as to their observations of defendant's ability to drive. The 911 caller testified that defendant's vehicle crossed the centerline such that he had to swerve to avoid a collision, that defendant jumped a divider island in the Walmart store parking lot, almost hitting a sign, and that he proceeded to "stumble" into the store. When following defendant after he left the store, the responding deputy testified that he saw defendant cross the double-yellow and fog lines on the road at least twice. Lay witnesses are qualified to testify about opinions they form as a result of direct physical observation. MRE 701; *Lamson v Martin (After Remand)*, 216 Mich App 452, 459; 549 NW2d 878 (1996). Furthermore, in effectuating the traffic stop, the responding deputy noticed defendant's "disheveled" appearance, including his unzipped pants, and that defendant was "slow and lethargic," his eyelids were puffy, and his eyes were glassy. Defendant states that he passed his field sobriety tests. However, while the deputy testified that defendant passed a "Horizontal Gaze Nystagmus Test," which tests loss of fine motor control in the eyes, the deputy further testified that defendant, in his opinion, failed two tests requiring him to recite part of the alphabet and count backward and failed a test requiring defendant to balance on one foot. Also, although not dispositive of the issue because defendant's blood-alcohol limit was under the statutory per se threshold, the presence of alcohol and other intoxicating substances "is properly admissible as bearing upon the issue of intoxication." *Miller*, 357 Mich at 407.

Defendant argues that there was insufficient evidence to support the OWVI conviction beyond a reasonable doubt because his poor driving on the night of his arrest could have been caused by other factors than intoxication, such as sleepiness. However, the prosecution's burden is not to disprove every theory consistent with defendant's innocence. *People v Solmonson*, 261 Mich App 657, 662-663; 683 NW2d 761 (2004). A jury is "free to believe or disbelieve, in whole or in part, any of the evidence presented," *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999), and in a light most favorable to the prosecution, the jury could have reasonably inferred that defendant was operating his vehicle in a manner less than that of an "ordinary, careful and prudent driver." *Lambert*, 395 Mich at 305.

### IV. JURY INSTRUCTION DENIED

Defendant argues that the trial court erred in denying his request for an instruction that his consumption of marijuana be presumed legal based on protections afforded under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421, *et seq*. We disagree.

"This Court reviews claims of instructional error de novo." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). This Court summarized the law concerning review of jury instruction issues in *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997):

> This Court reviews jury instructions in their entirety to determine whether the trial court committed error requiring reversal. *People v Davis*, 199 Mich App 502, 515; 503 NW2d 457 (1993). Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them. *People v Reed*, 393 Mich 342, 349-350;

-6-

224 NW2d 867 (1975); *People v Harris*, 190 Mich App 652, 664; 476 NW2d 767 (1991). Jury instructions must be read as a whole rather than extracted piecemeal to establish error. *People v Dabish*, 181 Mich App 469, 478; 450 NW2d 44 (1989). Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights. *People v Wolford,* 189 Mich App 478, 481; 473 NW2d 767 (1991). Error does not result from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction. *Harris, supra* at 664. A trial court need not give requested instructions that the facts do not warrant. *People v Dalton,* 155 Mich App 591, 599; 400 NW2d 689 (1986).

Recently, our Supreme Court addressed the relationship between the MMMA and the zero tolerance provision of the operating-while-intoxicated statute, MCL 257.625(8).[3] At issue was "whether the MMMA's protection supersedes the Michigan Vehicle Code's prohibition and allows a registered patient to drive when he or she has indications of marijuana in his or her system but is not otherwise under the influence of marijuana." *People v Koon*, 494 Mich 1, 3; 832 NW2d 724 (2013). *Koon* stated that the MMMA "does not provide carte blanche to registered patients in their use of marijuana," and "[o]ne prohibited activity is driving while under the influence of marijuana . . . ." *Id*. at 6, citing MCL 333.26427(b)(4). While § 7(b)(4) removes the MMMA's protections where a person operates a vehicle "while under the influence of marihuana," *Koon* explained that the MMMA does not define the phrase "under the influence" and declined to "set exact parameters of when a person is 'under the influence . . . .' " *Id*. Because *Koon* involved a charge under MCL 257.625(8), merely requiring "any amount" of a schedule 1 controlled substance to be present in a person's body, *Koon* concluded that the phrase "under the influence" for the purposes of § 7(b)(4) "contemplates something more than having any amount of marijuana in one's system and requires some effect on the person." *Id*. As a result, *Koon* concluded that "the MMMA is inconsistent with, and therefore supersedes, MCL 257.625(8) unless a registered qualifying patient loses immunity because of his or her failure to act in accordance with the MMMA." *Id*. at 8-9.

While *Koon* did not comprehensively define "under the influence" under § 7(b)(4) of the MMMA, it noted that "under the influence" is a term of art within the Motor Vehicle Code. *Koon*, 494 Mich at 6 n 14. Specifically, *Koon* referenced that phrase under MCL 257.625(1)(a) (stating that a person is "operating while intoxicated" if the person is "under the influence" of

---

[3] MCL 257.625(8) states:

> A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person has in his or her body *any amount of a controlled substance* listed in schedule 1 under section 7212 of the public health code, 1978 PA 368, MCL 333.7212, or a rule promulgated under that section, or of a controlled substance described in section 7214(a)(*iv*) of the public health code, 1978 PA 368, MCL 333.7214. [Emphasis added.]

intoxicating substances) as an example. *Id*. An entirely reasonable extension of that logic would be that the MMMA supersedes MCL 257.625(3), a *lesser* included offense of MCL 257.625(1)(a). See *Lambert*, 395 Mich at 305. That is, if the MMMA's protections are lost under § 7(b)(4) only when a person operates a vehicle "under the influence" of marijuana and the definition of "under the influence" is determined to be consistent with the phrase's meaning as a term of art, operating a vehicle while visibility impaired under MCL 257.265(3) as a result of marijuana use, like operating a vehicle while any amount of marijuana is present in a person's body under MCL 257.265(8), is too low of a threshold to deprive a person with protections under the MMMA that the person would otherwise be entitled to.

However, based on the circumstances of this case, the trial court's refusal to provide the jury with the proposed instruction—that defendant's marijuana use be presumed lawful—was not error requiring reversal. *Koon*'s applicability to this case is lessened due to the fact that the defendant in *Koon* was charged under MCL 257.625(8), which only applies to schedule 1 controlled substances, and the charge was based *only* on the defendant's use of marijuana. In this case, defendant was charged under MCL 257.625(a)(1) and the jury was instructed under MCL 257.625(3) for allegedly driving "under the influence" or while visibility impaired due to a combination of multiple different intoxicating substances. Further, the proposed broad instruction that defendant's use of marijuana be presumed lawful would have had the potential of misleading the jury by improperly implying that defendant's marijuana use should not be considered for the purposes of the charge under MCL 257.625(a)(1). That implication is not consistent with *Koon*'s thought regarding the meaning of "under the influence" under § 7(b)(4) in light of the phrase's use as a term of art under MCL 257.625(a)(1). See *Koon*, 494 Mich at 6 n 14. See also *Mull v Equitable Life Assurance Society of the United States*, 196 Mich App 411, 422-423; 493 NW2d 447, aff'd by 444 Mich 508 (1994) (stating, "A supplemental instruction need not be given if it would add nothing to an otherwise balanced and fair jury charge and would not enhance the ability of the jury to decide the case intelligently, fairly, and impartially").

Further, defendant argues that the proposed instruction had to be given in light of the "presumption" under § 4(d) of the MMMA, MCL 333.2642(4)(d).[4] The presumption under § 4(d), however, applies when certain criteria are present to show that a person engaged in the "medical use" of marijuana, which relates to whether a person is provided with immunity from

---

[4] MCL 333.2642(4)(d) states:

> There shall be a presumption that a qualifying patient or primary caregiver is engaged in the medical use of marihuana in accordance with this act if the qualifying patient or primary caregiver:
>
> (1) is in possession of a registry identification card; and
>
> (2) is in possession of an amount of marihuana that does not exceed the amount allowed under this act. The presumption may be rebutted by evidence that conduct related to marihuana was not for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition, in accordance with this act.

prosecution under the MMMA in the first instance. See *State v McQueen*, 493 Mich 135, 154; 828 NW2d 644 (2013). In this case, the fact of the MMMA's protections were assumed throughout trial, illustrated by the arresting officer's testimony that defendant asserted that he was a qualified, registered patient under the MMMA and provided his identification card. While the presumption under § 4(d) provides protection from prosecution based on a person's *use* of marijuana made lawful under the MMMA, that presumption should not be so broadly applied to support an instruction that defendant's marijuana use while operating a vehicle is presumed legal for the purposes of the jury's consideration of the offenses as charged in this case. As noted, § 7(b)(4) does not extend the MMMA's protections to *any* instance where a person is operating a vehicle and engaging in the "medical use" of marijuana; rather, it limits the MMMA's protections where the person is "under the influence" of marijuana.

In light of the charges in this case that involved both MCL 257.625(1)(a) and (3), which were premised on multiple intoxicating substances in defendant's system and testimony regarding his driving ability and appearance on the night of his arrest, the standard jury instructions were adequate to fairly present the issues at trial. See *Wolford*, 189 Mich App at 481.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy